DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pickaway County Common Pleas Court judgment of conviction and sentence. A jury found Troy A. Doyle, defendant below and appellant herein, guilty of receiving stolen property in violation of R.C. 2913.51, and failure to comply with the order of signal of a police officer in violation of R.C. 2921.331.
 {¶ 2} Appellant assigns the following errors for our review:[2]
First Assignment of Error:
"The trial court committed reversible error when it granted mr. doyle's request to waive counsel that was not made knowingly, voluntarily or intelligently, in violation of the sixth andfourteenth amendments to the united states constitution."
Second Assignment of Error:
"The trial court committed reversible error when it failed to rule on the admissibility of a police incident report that was submitted to it for an in camera inspection, in violation of crim.r. 16(b)(1)(g) and the fifth and fourteenth amendments to the united states constitution."
Third Assignment of Error:
"The trial court committed reversible error when it sentenced mr. doyle for a conviction that was not supported by the manifest weight of the evidence, in violation of the fifth andfourteenth amendments to the united states constitution."
Fourth Assignment of Error:
"Mr. Doyle was denied a fair trial due to prosecutorial misconduct during closing arguments, in violation of the fifth
and fourteenth amendments to the united states constitution."
Fifth Assignment of Error:
"The trial court committed plain error when it gave improper jury instructions, in violation of the fifth andfourteenth amendments to the united states constitution."
Sixth Assignment of Error:
"Mr. Doyle received ineffective assistance of counsel when counsel failed to subpoena witnesses and failed to move for an expedited hearing on mr. doyle's motion to waive counsel, in violation of the sixth and fourteenth amendments to the united states constitution."
 {¶ 3} In the early hours of April 25, 2003, Robert Gillum was awakened by a barking dog. Gillum looked outside and discovered that his semi truck and trailer were missing. Gillum then contacted the Ross County Sheriff's Department and Deputy Roger Hyden was dispatched to the scene. Deputy Hyden took a report and distributed a state wide "teletype" through the "LEADS" system to alert other law enforcement agencies to be on the lookout for the vehicle.
 {¶ 4} Shortly thereafter Pickaway County Sheriff's Department Deputy Curtis Fortner spotted the vehicle at a "Pilot Station" on US Route 23. Deputy Fortner began to investigate, but when the driver saw him he sped off. Deputy Fortner activated his pursuit lights and gave chase. After three or four miles, the truck ran off the road and crashed into a sign. The driver then exited the vehicle. Deputy Fortner chased the driver but became entangled in fencing. Deputy Fortner, nevertheless, gave a description to Deputy Hyden who printed out photographs of two men known to have stolen semis in the past. Deputy Fortner examined the photographs and identified appellant as the man he saw that night in the cab of the semi.
 {¶ 5} The Pickaway County Grand Jury returned an indictment on May 2, 2003 and charged appellant with receiving stolen property in violation of R.C. 2913.51, and with the failure to comply with a police officer's signal in violation of R.C.2921.331. The matter proceeded to a jury trial at which appellant represented himself pro se with assistance from his former counsel.
 {¶ 6} At trial, Gillum identified the semi/trailer recovered in Pickaway County as belonging to him and denied that he gave appellant permission to have it in his possession. Also, Deputy Fortner identified appellant as the man he observed in the semi at the Pilot Station and who escaped after the vehicle crashed. Linda Whitaker testified, however, that appellant was with her that entire weekend.
 {¶ 7} The jury found appellant guilty of both charges. After a recitation of his lengthy criminal background, the trial court sentenced appellant to eighteen months on each count of the indictment and further ordered that the terms be served consecutively. Subsequently, appellant filed a motion for new trial but the trial court denied his request. This appeal followed.
 I {¶ 8} Appellant's first assignment of error concerns the trial court's decision to allow him to waive counsel and to represent himself pro se. We begin by noting that appellant filed a motion on May 20, 2004 and stated that he wanted "to waive assigned counsel" due to a conflict of interest and "proceed pro se in all matters."[3] Appellant then wrote a letter to the court and stated that he did not want to delay the scheduled trial date and that he wished to proceed pro se. At the June 15, 2004 motion hearing appellant emphatically argued that he wanted to represent himself pro se. The trial court, equally emphatically, attempted to convince appellant otherwise. The court ultimately granted appellant's motion, albeit reluctantly, and permitted appellant to represent himself at trial.[4]
Despite this, appellant now asserts that the trial court violated his constitutional rights by granting his request. We disagree.
 {¶ 9} The Sixth Amendment, as made applicable to the states by the Fourteenth Amendment Due Process Clause, guarantees a defendant in a state criminal proceeding the constitutional right of self-representation and that he may proceed to defend himself without counsel if he voluntarily, knowingly and intelligently elects to do so. State v. Martin, 103 Ohio St.3d 385,816 N.E.2d 227, 2004-Ohio-5471, at ¶ 24; State v. Taylor,98 Ohio St.3d 27, 781 N.E.2d 72, 2002-Ohio-7017, at ¶ 45; State v.Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, at paragraph one of the syllabus. In order to establish an effective waiver of the right to counsel, trial courts must make sufficient inquiry to determine if a defendant fully understands, and intelligently relinquishes, that right. Gibson, supra at paragraph two of the syllabus. Moreover, the court must inform a defendant of the dangers inherent in self-representation before it permits him to proceed without counsel. State v. Ebersole (1995),107 Ohio App.3d 288, 293, 688 N.E.2d 934; State v. Ferguson, Jackson App. No. 04CA13, 2005-Ohio-1438, at ¶ 18.; State v. Tackett,
Jackson App. No. 04CA12, 2005-Ohio-1437, at ¶ 29.
 {¶ 10} No single definitive test exists to apply in determining whether an offender voluntarily, knowingly and intelligently waives the right to counsel. In State v. Evans
(Apr. 16, 1991), Pike App. No. 454, we discussed the standards and tests as follows:
"The Supreme Court of the United States has reviewed a trial court's duty in determining whether a defendant has knowingly, voluntarily, and intelligently waived his or her constitutional right to counsel in the following manner:
`To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'
Courts have applied various tests to determine whether a defendant has knowingly, voluntarily, and intelligently elected to represent himself, with suggestions that a criminal defendant be advised of the following: (1) self-representation would be detrimental; (2) the defendant must follow all technical rules of substantive, procedural, and evidentiary law; (3) the prosecution would be represented by an experienced attorney; (4) the defendant must have the intellectual capacity to waive his right to counsel; (5) the possible punishments to which the defendant might be subjected; (6) if there is a disruption of the trial, the right to self-representation will be vacated; and (7) despite the defendant's efforts, he or she cannot subsequently claim ineffective assistance of counsel. [In Faretta v. United States
(1975), 422 U.S. 806, 835, 45 L.Ed.2d 562, 95 S.Ct. 2525, the United States Supreme Court expounded on] the duty of trial courts in this matter:
`When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forego those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open.'
In Faretta, questioning by the trial court judge revealed that the defendant had once represented himself in a criminal prosecution; that he had a high school education; and that he did not want to be represented by the public defender because he believed that they had a heavy caseload. Additionally, the trial court advised Faretta that he was making a mistake; that he would receive no special favors; and that he had to follow normal trial procedure. The United States Supreme Court held that, based on these facts, Faretta knowingly, voluntarily, and intelligently waived his right to counsel and should have been allowed to represent himself. Id.
Since Faretta, a myriad of courts have addressed the question of the type of record necessary to establish that a defendant's waiver of counsel is knowing, voluntary, and intelligent, with most courts adopting a nonformalistic approach to determining sufficiency of the waiver from the record as a whole rather than requiring a deliberate and searching inquiry. United States v.McDowell (6th Cir. 1987), 814 F.2d 245, 249; United States v.Tompkins (2d Cir. 1980), 623 F.2d 824; United States v. Kimmel
(9th Cir. 1982), 672 F.2d 720, 721-22. The only requirement for a knowing, voluntary, and intelligent waiver is that the record show that a defendant elected to proceed pro se with his "eyes open." Faretta, supra." (Citations partially omitted.)
 {¶ 11} Because of the differing tests and evolving standards, Ohio courts have typically rejected application of a rote and mechanistic checklist of factors. Instead, Ohio looks to see if the totality of circumstances demonstrate a voluntary, knowing and intelligent waiver of the Sixth Amendment right to counsel. See e.g. Akron v. Ragle, Summit App. No. 22137, 2005-Ohio-590, at ¶ 12; In re Estes, Washington App. No. 04CA11,2004-Ohio-5163, at ¶ 14; State v. Thompson (Oct. 29, 2001), Stark App. No. 2000CA283. In the case sub judice, we readily conclude that the record as a whole demonstrates a waiver.
 {¶ 12} First, the trial court fully explained to appellant the dangers of self-representation. The Court warned him that "it is a dangerous course of action to proceed to trial without a lawyer." The court also attempted to make clear to appellant that he did not understand the legal system to a degree that he could competently represent himself. The court repeatedly asked appellant if he knew what a "peremptory challenge" was and, each time, he could not answer the question. Nevertheless, appellant insisted he that "underst[ood] the judicial system" and that he wanted to represent himself.
 {¶ 13} Second, the trial court made clear that it would not assist appellant in presenting his defense and that he would be "held to the same standards as an attorney." The court emphasized that he would be "required to adhere to the rules of evidence the same as an attorney [and] the rules of criminal procedure the same as an attorney." If appellant had a difficulty in complying with these procedural rules, the court warned that it could "not assist [him] in the presentation of [his] case." Appellant, nevertheless, insisted that he be permitted to represent himself.
 {¶ 14} Third, the trial court asked appellant if he knew "the maximum penalty in each of these cases" and appellant answered "eighteen months on each charge." The court clarified that he could also be ordered to pay a five thousand dollar fine for each charge and that he was subject to a mandatory license suspension. Appellant stated that he was "putting three years of [his] life on this" but was "pretty sure" that he could represent himself.[5]
 {¶ 15} Fourth, the record indicates that appellant is no stranger to the criminal justice system and that he had a grasp as to how the system works. A recitation of his prior contact with authorities spans three pages in the transcript, and a review of the trial court proceedings reveals a surprisingly few number of objections from the prosecution. The defense theory of the case was alibi and a mistaken identification by Deputy Fortner. For a pro se litigant, appellant ably and capably pursued both lines of defense.
 {¶ 16} Fifth, the trial court diligently explained to appellant his Constitutional right to representation. The public defender also stated that his office would provide another lawyer to represent him and the trial court indicated that it would grant a continuance for that purpose. Appellant, nevertheless, insisted both in his letter and at the hearing, that he wished to proceed with the trial as scheduled.
 {¶ 17} Appellant counters that the trial court did not explain the "nature of the charges" against him, nor did it discuss "possible defenses." As to his first point, we note that appellant's arguments at the hearing, and in his various pro se filings, indicate that he was well aware of the general "nature" of the charges against him, if not the specifics. As to the trial court's failure to go over possible defenses, we note that appellant had already filed a "notice of alibi" and his alibi defense received extensive discussion during the hearing. Appellant and the court also discussed his mistaken identity challenge to Deputy's Fortner's identification of him as the perpetrator. We are at a loss as to what more the trial court could have done insofar as discussing possible defenses.
 {¶ 18} Appellant also asserts that his decision to represent himself was an "emotional response" of "momentary caprice" and should have been disregarded. We are not persuaded. Appellant filed his motion to waive counsel on May 20, 2004. He then forwarded a letter to the "bailiff or judge" and stated that he wished to proceed pro se.[6] At the hearing, about one month later, appellant was more emphatic about his desire to represent himself. Given this time span, appellant cannot contend that he made his request hastily and without sufficient deliberation and consideration.
 {¶ 19} We also note that a criminal defendant's decision to represent himself is generally problematic for trial courts. On the one hand, self-representation is an important right and a refusal to grant a defendant the right to appear pro se at trial may warrant a reversal. On the other hand, when a pro se defendant does not receive the desired outcome at trial, a court's decision to allow him to proceed pro se presents an easy target to raise on appeal. This is not a case in which a defendant has been denied counsel, nor is it a situation in which we must discern whether a defendant impliedly waived his right to counsel. To the contrary, in the instant case appellant insisted that he wanted to exercise his right of self-representation and was emphatic that he be allowed to proceed in that manner. The trial court implored him not to proceed on his own and, even after it permitted him to do so, directed that his public defender remain available to assist him. In light of the trial court's extensive colloquy with appellant, its explanation of his rights, its warnings of the dangers of self-representation and other admonitions, combined with appellant's knowledge of the criminal justice system and his understanding of the defenses that he intended to pursue at trial, we conclude that appellant's waiver of counsel was knowingly, intelligently and voluntarily made.
 {¶ 20} For these reasons, we find no merit in appellant's first assignment of error and it is accordingly overruled.
 II {¶ 21} We next proceed, out of order, to appellant's sixth assignment of error wherein appellant contends that he received ineffective assistance of counsel prior to counsel's removal (so that appellant could represent himself). Specifically, appellant argues that his trial counsel should have requested an expedited hearing on his motion to waive counsel and that he should have subpoenaed certain witnesses that appellant wished to have testify. We find no merit in either argument.
 {¶ 22} To obtain the reversal of a conviction on the grounds of ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial. See Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674, 104 S.Ct. 2052; also see State v.Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v.Goff (1998), 82 Ohio St.3d 123, 139, 694 N.E.2d 916. Both prongs of this test need not be analyzed if a claim can be resolved under only one of them. See State v. Madrigal (2000),87 Ohio St.3d 378, 389, 721 N.E.2d 52. Thus, if a claim can be resolved because appellant has not shown prejudice, that course of action should be followed. See State v. Loza (1994), 71 Ohio St.3d 61,83, 641 N.E.2d 1082.
 {¶ 23} Appellant's first argument is that trial counsel failed to subpoena certain witnesses. Appellant, however, does not specify what witnesses or what testimony those witnesses might have given or how it would have assisted the defense. Without that information, we fail to see how appellant suffered the requisite prejudice.
 {¶ 24} Moreover, after our review of the trial transcript, we note that appellant called five witnesses to testify on his behalf and only one, Linda Whitaker, provided any evidence that benefitted his defense. Trial counsel may well have thought the other witnesses that appellant wanted to testify would be equally unhelpful and, thus, did not wish to subpoena them. We will not review decisions made by counsel that concern matters of trial strategy. See State v. Coe, 153 Ohio App.3d 44,790 N.E.2d 1222, 2003-Ohio-2732, at ¶ 64; State v. Schoonover (Sep. 21, 1998), Adams App. No. 97CA647; State v. Russell (Jun. 30, 1998), Athens App. No. 97CA37.
 {¶ 25} Appellant's second argument is that his previous counsel was ineffective for not seeking an expedited hearing on his motion to withdraw. Here again, however, appellant does not articulate why this alleged error prejudiced him. The most appellant can say in his brief is that by holding the hearing so close to the trial date, it "compounded [his] apprehension . . ." This is an insufficient showing of prejudice.[7] Given appellant's insistence on representing himself, it makes little difference whether his motion was heard sooner rather than later. The result was the same — he appeared at trial pro se. Moreover, appellant filed pro se materials with the trial court before his waiver of counsel was accepted thus making the formal recognition of his self-representation little more than a formality.
 {¶ 26} For these reasons, we find no merit in the second assignment of error and it is accordingly overruled.
 III {¶ 27} We now address appellant's second assignment of error that concerns the trial court's handling of a "police incident report." After Deputy Hyden testified, appellant submitted the officer's incident report to the court to review for "inconsistencies." The trial court "reviewed the statement" and then told appellant that he could "go ahead and cross-examine." Appellant argues that the trial court violated Crim.R. 16(B)(1)(g), and the Fifth and Fourteenth Amendments to the U.S. Constitution, in not ruling on the admissibility of that report.[8]
We disagree.
Crim.R. 16(B)(1)(g) states, in pertinent part:
"Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."
 {¶ 28} It is not clear that appellant made a motion under this rule or that the court ruled on such a motion. The transcript reveals the following colloquy between appellant and the court after Deputy Hyden's direct testimony and before the beginning of cross-examination:
"Mr. Doyle: * * * Your Honor, Lieutenant Hyden had an incident report on this matter, I believe, and the Defendant would like you to review it for any inconsistencies. We would submit it to you for that purpose at this time.
The Court: All right. The Court has reviewed the statement. You can go ahead and cross examine."
 {¶ 29} Appellant did not request the court for an in camera review pursuant to Crim.R. 16(B)(1)(g). After our review we note that any error constitutes harmless error. See Crim.R. 52(A). First, it does not appear from the transcript that appellant attempted to cross-examine Deputy Hyden regarding his report, nor does it appear that the court prohibited appellant from using that report in his cross-examination. Second, appellant does not explain how the trial court's actions prejudiced his defense and we cannot discern any prejudice from our own review.[9]
Third, to the extent that appellant wanted to use the report to challenge Deputy Hyden's suspicion that appellant was the perpetrator based on Deputy Fortner's description of the suspect, this matter was discussed extensively during cross-examination notwithstanding the incident report. Furthermore, in light of Deputy Fortner's positive identification of appellant at trial as the perpetrator, we question how Deputy Hyden's incident report would have benefited appellant.
 {¶ 30} Appellant also asserts that the trial court erred by not preserving the incident report for appellate review as mandated by Crim.R. 16(B)(1)(g). That rule only requires the report to be preserved, however, if defense counsel is not provided the entire statement. The court told appellant to cross-examine Deputy Hyden which suggests that the report may have, in fact, been provided to him. It also appears that a copy of the report is attached to appellant's motion for new trial, thus indicating that the court either gave him a copy or that he had one anyway thus negating any claim of prejudice.
 {¶ 31} Finally, as with his contention that the court did not rule on his motion for an in camera inspection, we find any error to be harmless. Appellant does not specify how the alleged failure to preserve the report has prejudiced him and the fact that it was attached to one of his pro se motions for new trial suggests that it did not.
 {¶ 32} For these reasons, we find no merit in the second assignment of error and it is hereby overruled.
 IV {¶ 33} Appellant argues in his third assignment of error that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 34} A conviction cannot be reversed as being against the manifest weight of the evidence unless it is obvious that the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997),120 Ohio App.3d 457, 473, 698 N.E.2d 440; State v. Garrow (1995),103 Ohio App.3d 368, 370-371, 659 N.E.2d 814; State v. Davis (1988),49 Ohio App.3d 109, 113, 550 N.E.2d 966. Having thoroughly reviewed the record in this case, we cannot conclude that appellant's conviction is against the manifest weight of the evidence below.
 {¶ 35} R.C. 2913.51(A) states that no person shall receive, retain, or dispose of property of another knowing, or having reasonable cause to believe, that the property has been obtained through the commission of a theft offense. Gillum identified the semi recovered by sheriff's deputies as the vehicle missing from his house. He further testified that appellant did not have his permission to have that vehicle in his possession. Deputy Fortner positively identified appellant as the driver of that semi. He also related that appellant attempted to escape, first in the truck and then on foot, thus showing that appellant knew, or had reasonable cause to believe, that the semi had been obtained in a theft offense. This evidence constitutes ample competent, credible evidence that appellant received stolen property.
 {¶ 36} R.C. 2921.331(B) states that no person shall operate a motor vehicle so as to willfully elude or flee a police officer after receiving a signal from a police officer to bring the person's motor vehicle to a stop. Deputy Fortner testified that when appellant sped away from the gas station, he gave chase with his pursuit lights but the vehicle would not stop. This constitutes ample competent, credible evidence that appellant failed to comply with a police officer's order(s).
 {¶ 37} Appellant counters that Deputy Fortner's testimony was not credible and that Whitaker testified that appellant was with her the evening in question and thus contradicted Deputy Fortner's eyewitness testimony. We note that decisions as to the weight and credibility of witnesses rests with the trier of fact.State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763;State v. Ballew (1996), 76 Ohio St.3d 244, 249, 667 N.E.2d 369;State v. Williams (1995), 73 Ohio St.3d 153, 165,652 N.E.2d 721. A trier of fact is free to believe all, part or none of the testimony of each witness who appeared before it. State v.Nichols (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v.Caldwell (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096;State v. Harriston (1989), 63 Ohio App.3d 58, 63,577 N.E.2d 1144.
 {¶ 38} In the instant case, the jury obviously found Deputy Fortner more credible and discounted Whitaker's testimony. This is within the trier of fact's province and, after our review of that testimony, we find no reversible error.
 {¶ 39} For these reasons, we find no merit in the third assignment of error and it is accordingly overruled.
 V {¶ 40} In his fourth assignment of error, appellant claims that he was the victim of prosecutorial misconduct because of the prosecutor's remark made during closing argument:
"Mr. Doyle poses the question to you that we didn't even prove that he can drive a semi. I think we did. I think Deputy Fortner's testimony pretty clearly established that he can drive a semi. And the defendant told you he could drive a semi inpreference [sic] to one of his questions to his witnesses. Hemade reference to a previous semi that he was involved in,
probably, if I can remember at the time, but he acknowledged to you that he has prior experience with semi trucks." (Emphasis added.)
 {¶ 41} Appellant contends that no evidence supported these comments — particularly the italicized comments about appellant admitting to the jury that he could drive a semi. These comments, appellant concludes, amount to reversible error. We disagree.
 {¶ 42} First, the record does not indicate that appellant objected to these comments. Thus, appellant waived all but plain error. See State v. Bajaj, Columbiana App. No. 03CO16, 2005-Ohio-2931, at ¶ 59; State v. Baldev, Butler App. No. CA2004-05-106, 2005-Ohio-2369, at ¶ 23; State v. Pasqualucci,
Summit App. No. 21905, 2004-Ohio-4876, at ¶ 24. Second, we need not engage in a plain error analysis because, contrary to appellant's argument, the prosecution's comments are in fact supported by the evidence in the record. We note that Deputy Fortner testified that appellant drove the semi away from the gas station. Moreover, appellant and Pamela Bond engaged in the following colloquy during trial:
"Q. All right. All Right. Have you ever known Mr. Krafthefer to steal a semi?
A. No.
Q. I stole one at one time?
A. Yes.
Q. But they never did prove who was driving it. Have you ever known me to drive a semi?
A. No."
 {¶ 43} While this exchange is unclear, it appears to us that appellant acknowledged what had already been brought out by Deputy Hyden, namely, that appellant had previously stolen a semi. The fact that appellant has previously stolen a semi would reasonably lead one to believe that appellant can operate a semi. Asportation, after all, is a fundamental element of virtually any theft offense.
 {¶ 44} In our view, the prosecutor's remarks were derived from the evidence and we find nothing improper in the state's comments, and certainly not rising to the level of error.
 {¶ 45} Accordingly, we hereby overrule appellant's fourth assignment of error.
 VI {¶ 46} Appellant argues in his fifth assignment of error that the trial court gave erroneous jury instructions. In particular, appellant cites to the following portion of the court's charge:
"You may not consider the appearance of the witnesses upon the stand; the manner of testifying; the reasonableness of the testimony; the opportunity each witness had to see, hear and know the things concerning which he or she testified; accuracy of memory; frankness or lack of it; intelligence, interest and bias, if any; together with all the facts and circumstances surrounding the testimony." (Emphasis added.)
 {¶ 47} Appellant contends that the presence of the word "not" in the above cited instruction was erroneous because it told jurors that they could not ascertain weight and credibility among conflicting witness testimony. While we agree that this word was inadvertently included in the jury instruction, appellant fails to persuade us that it constitutes reversible error.[10]
 {¶ 48} First, we note that appellant did not object to the erroneous instruction. Thus, absent plain error, appellant waived the issue for appellate review. See Crim.R. 30(A); also seeState v. Neely, Hamilton App. No. C-030755, 2005-Ohio-2342, at ¶ 41; Findlay v. Reinhart, Hancock App. No. 5-04-45, 2005-Ohio-1918, at ¶ 7; State v. Lamonds, Lucas App. No. L-03-1100, 2005-Ohio-1219, at ¶ 25. For plain error to be found under Crim.R. 52(B), the following three conditions must exist: (1) an error in the proceedings; (2) the error must be plain, i.e., the error must be an "obvious" defect in the trial proceedings; and (3) the error must have affected "substantial rights," i.e., the trial court's error must have affected the outcome of the trial. See State v. Barnes (2001),94 Ohio St.3d 21, 27, 759 N.E.2d 1240; State v. Sanders (2001),92 Ohio St.3d 245, 257, 750 N.E.2d 90; State v. Hill (2001),92 Ohio St.3d 191, 200, 749 N.E.2d 274. Further, the Ohio Supreme Court has stated that Crim.R. 52(B) is to be invoked "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111, 559 N.E.2d 710; State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. A reviewing court should take notice of plain error only if it seriously affects fairness, integrity or public reputation of judicial proceedings. Barnes, supra at 27.
 {¶ 49} We decline to recognize plain error in this case for several reasons. First, the jury appears to have ignored the erroneous instruction. Deputy Fortner testified that he saw appellant driving the stolen semi whereas Whitaker stated that appellant was with her that evening. Obviously, the jury resolved this conflict in the evidence by weighing the credibility of each witness who appeared before it.
 {¶ 50} Second, considering the jury instructions in their totality, we believe the inclusion of the word "not" did not precipitate a manifest miscarriage of justice. Elsewhere in its instructions, the trial court expressly told the jury they must "decide the disputed facts" and that they are the "sole judges of the facts, the credibility of the witnesses and the weight ofthe evidence." (Emphasis added.) Further, the court directed them to "apply the tests of truthfulness which [they] are accustomed to applying in [their] daily lives" to ascertain the credibility of witnesses. We note that in reviewing propriety of jury instructions, courts should not look at one word or phrase in isolation. State v. Porter (1968), 14 Ohio St.2d 10, 13,235 N.E.2d 520. Rather, jury instructions must be viewed in their entirety. State v. Shaffer, Trumbull App. No. 2001-T-36, 2003-Ohio-6701, at ¶ 52; State v. Gladding (Dec. 1, 2000), Lake App. No. 99-L-91; State v. Salim (Aug. 16, 2000), Medina App. No. 2969-M. That said, after we view the totality of the jury instructions given in the case sub judice, we find no plain error. Rather, we believe that the jury was instructed to determine witness credibility.
 {¶ 51} Finally, as the prosecution points out, the jury was provided written instructions for use in their deliberations. Those instructions provided, inter alia, as follows:
"As jurors, you have the sole and exclusive duty to decide the credibility of the witnesses who will testify in this case, which simply means that it is you who must decide whether to believe or disbelieve a particular witness and how much weight, if any, to give to the testimony of each witness. In determining these questions, you will apply the tests of truthfulness which you apply in your daily lives. These tests include the appearance of each witness on the stand; his manner of testifying; the reasonableness of the testimony; the opportunity he had to see, hear and know the things concerning which he testified; his accuracy of memory; frankness or lack of it; intelligence; interest and bias, if any; together with all the facts and circumstances surrounding the testimony. Applying these tests, you will assign to the testimony of each witness such weight as you deem proper. You are not required o believe the testimony of any witness simply because it was given under oath. You may believe or disbelieve all or any part of the testimony of any witness."
 {¶ 52} It is difficult to imagine how the trial court could have been any clearer regarding the jury's responsibility to weigh the evidence and to gauge witness credibility. In light of these written instructions, and after we consider the totality of the verbal instructions provided prior to deliberation, we find no plain error arising from the erroneous word inserted into one part of the verbal instructions.
 {¶ 53} For these reasons, the fifth assignment of error is without merit and is hereby overruled.
 {¶ 54} In summary, after our review of all the errors assigned and argued in the briefs, and having found no merit in the assignments of error, we hereby affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. McFarland, J.: Concur in Judgment Opinion
[2] Appellant's brief contains no "statement of the assignments of error" as required by App.R. 16(A)(3). Thus, we take these assignments of error from appellant's table of contents.
[3] The "conflict of interest" allegedly involves trial counsel's opinion as to appellant's culpability and whether appellant should have accepted a plea agreement.
[4] Appellant's court appointed counsel remained on hand to provide assistance if needed or to answer any questions.
[5] Appellant criticizes the trial court's explanation of the possible penalties as "brief," but does not specify what more the court should have done.
[6] Appellant's letter is neither dated nor time stamped by the clerk, but appears in the record subsequent to appellant's motion and, thus, we presume it was sent sometime after the original motion.
[7] We will not assume the existence of prejudice on an ineffective assistance of counsel claim, but must require that it be affirmatively shown. See State v. Tucker (Apr. 2, 2002), Ross App. No. 01CA2592; State v. Kuntz (Feb. 26, 1992), Ross App. No. 1691; State v. Maughmer (Feb. 7, 1991), Ross App. No. 1667.
[8] Although his second assignment of error cites the Fifth andFourteenth Amendments to the United States Constitution, this question primarily involves state procedural rules. Appellant fails to make any argument as to how the federal Constitution is implicated.
[9] The incident report appellant seems to refer is attached to his October 14, 2004 motion for new trial. That report simply describes Deputy Hyden's contact with Gillum (when he reported the semi was missing) and his later contact with Deputy Fortner who gave a description of the perpetrator.
[10] For purposes of our review, we assume that the word "not" was spoken by the trial court and that this is not simply a typographical error in the transcript. It is improbable, however, that this instruction would have escaped the attention of the court and the prosecutor.