OPINION
{¶ 1} Defendant-appellant, Troy A. Doyle, appeals his conviction and sentence in the Brown County Court of Common Pleas for receiving stolen property.
 {¶ 2} In the early morning of January 15, 2004, a 1998 Peterbilt semi truck was discovered missing from Beasley Trucking in Chillicothe, Ohio. The truck had been ripped loose from the trailer it was attached to, and the oil line connecting the two had been severed. At about 2:20 a.m. that morning, a state trooper was sitting in his cruiser on State Route 32 in Brown County, just west of State Route 62, when he noticed a semi truck traveling at a high rate of speed. After clocking the truck traveling at 69 m.p.h. in a 55 m.p.h. zone, the trooper activated his pursuit lights and attempted to pull the truck over. Approximately one mile later, the truck's brakes were hit, and the truck skidded to a stop at the side of the road. Soon after, the passenger's door opened and an individual ran out of the truck, jumped a fence, and ran away. The trooper described the individual as a middle-aged man wearing blue jeans, a lighter-colored jacket, and white tennis shoes.
 {¶ 3} The trooper approached the truck. Upon noticing movement inside the truck, the trooper decided not to pursue the man who had fled. In the truck, the trooper observed feet in the sleeper cab and ordered that person to get out. That person was Susan Doyle, appellant's wife. In her purse was a prescription medication for appellant. After running the truck's license plate, the trooper discovered it belonged to Beasley Trucking in Chillicothe, Ohio. The trooper testified that the truck appeared to have been hot wired. The trooper called for a K-9 unit. At the scene, the dog picked up a scent and began tracking. His trail led him to a barn three miles from the truck where appellant was discovered and apprehended.
 {¶ 4} In February 2004, appellant was indicted on one count of receiving stolen property, a felony of the fourth degree, in violation of R.C. 2913.51(A). The matter proceeded to a jury trial at which appellant represented himself pro se with the assistance of his former court-appointed attorney. On August 2, 2005, a jury found appellant guilty as charged. The trial court sentenced appellant to a 16-month prison term to be served consecutive to a three-year aggregate sentence he was serving for a prior conviction in Pickaway County, Ohio. On appeal, appellant raises three assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED MR. DOYLE'S REQUEST TO WAIVE COUNSEL THAT WAS NOT MADE KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY, IN VIOLATION OF THESIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 7} This assignment of error concerns the trial court's decision to allow appellant to waive counsel and represent himself at trial. Appellant argues that the trial court failed to ensure that his decision to waive counsel and proceed pro se was made knowingly, intelligently, voluntarily, and with the understanding of the dangers of self-representation. As a result, allowing him to waive counsel constituted reversible error.
 {¶ 8} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant in a state criminal proceeding the constitutional right of self-representation when the defendant voluntarily, knowingly, and intelligently so elects. State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975),422 U.S. 806, 95 S.Ct. 2525. To establish an effective waiver of counsel, the trial court must make sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. Gibson at paragraph two of the syllabus.
 {¶ 9} No single definitive test exists to apply in determining whether a defendant voluntarily, knowingly, and intelligently waives the right to counsel. Ohio courts typically look to see if the totality of circumstances demonstrate a voluntary, knowing, and intelligent waiver of counsel. See e.g.Akron v. Ragle, Summit App. No. 22137, 2005-Ohio-590; State v.Thompson (Oct. 29, 2001), Stark App. No. 2000CA283.
 {¶ 10} Nonetheless, "[t]o discharge this duty in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. * * * To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." Gibson, 45 Ohio St.2d at 377, quoting Von Moltke v.Gillies (1948), 332 U.S. 708, 723, 68 S.Ct. 316. Crim.R. 44(C) also requires that the trial court obtain a signed, written waiver by the defendant in "serious offense cases." Crim.R. 2(D) defines a "serious offense" as any felony.
 {¶ 11} "Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835. InFaretta, questioning by the trial court revealed that the defendant had once represented himself in a criminal prosecution; had a high school education; and did not want to be represented by the public defender because he believed they had a heavy caseload. In addition, the trial court advised Faretta that he was making a mistake; would receive no special favors; and had to follow normal trial procedures. The United States Supreme Court held that, based on these facts, Faretta knowingly, voluntarily, and intelligently waived his right to counsel and should have been allowed to represent himself. Id. at 8358-36.
 {¶ 12} In the case at bar, appellant's case proceeded to a jury trial on August 1, 2005. On June 27, appellant filed a pro se motion for court records. The motion was granted by the trial court. Then, on July 14, he filed a pro se motion to suppress identification. On July 27, appellant's court-appointed attorney moved to withdraw as counsel, stating: "Counsel further states that on numerous occasions the Defendant has expressed his desire to go forward in this matter pro se. * * * Counsel further states that on July 23, 2005 Counsel spoke to Defendant who again renewed his desire to go forward in this matter pro se." On the first day of trial, a hearing was held to address appellant's desire to represent himself.
 {¶ 13} During the hearing, the trial court asked appellant if he understood that he had a right to be represented by an attorney, and that if he chose to proceed pro se, he would be waiving his constitutional right to an attorney. Appellant replied he understood. The trial court then told appellant that in the event he would proceed pro se, the court intended to appoint his court-appointed attorney as a stand-by counsel and legal advisor. The trial court asked appellant if it was his intention, in a pro se capacity, to select jurors, make an opening argument, question witnesses, "and so forth." Appellant replied "yes." The court also asked appellant if he understood that although he would be allowed to confer with the stand-by counsel, any decision would be his decision. Appellant replied he understood. At that point, the trial court presented a written waiver[1] of counsel which appellant and the trial court signed. As noted earlier, the matter then proceeded to a jury trial at which appellant represented himself pro se with the assistance of his former court-appointed attorney.
 {¶ 14} Upon reviewing the colloquy between the trial court and appellant, we find that the trial court's inquiry regarding appellant's desire to waive counsel and proceed pro se was inadequate and insufficient under Faretta and Gibson. The trial court never asked appellant (and thus failed to determine) if he knew or understood the nature of the charge against him, the statutory offenses included within the charge, the range of allowable punishments thereunder, and possible defenses to the charge and circumstances in mitigation thereof. The court also never explained the dangers and disadvantages of self-representation, including that appellant would be held to the same standards as an attorney, and that if he had any difficulty in presenting his defense and complying with procedural rules, the court could not assist him in the presentation of his case. Nonetheless, we uphold appellant's waiver of counsel for the following reasons.
 {¶ 15} Appellant argues that his waiver of counsel was not voluntary, knowing, or intelligent because the record shows he was unaware of the nature of the charges against him and of the maximum sentence he was facing before he waived his right to counsel. Appellant claims that had he known he could be sentenced up to 18 months in prison consecutive to the sentence he was serving for a prior conviction in Pickaway County, Ohio, he would never have waived his right to counsel. We disagree.
 {¶ 16} Upon reviewing the record, we find that appellant cannot show that but for the trial court's failure to properly advise him under Gibson and Faretta, he would not have waived his right to counsel and would not have proceeded pro se.
 {¶ 17} With regard to sentencing, the record clearly shows that appellant knew he could be sentenced to between six and 18 months for the offense of receiving stolen property. The record also clearly shows that at a hearing on January 5, 2005 (seven months before trial) during which appellant was represented by counsel, the state offered appellant to serve a six month consecutive or 18 month concurrent prison sentence in exchange for his guilty plea. The offer was only open for that day and appellant rejected it. During that hearing, the trial court clearly told appellant "I'm not saying I'm going to give any indication at all as to what I would or would not do on sentence."
 {¶ 18} At his sentencing hearing, appellant first claimed that had he known what he knew then, he would never have waived his right to counsel. Yet, at that hearing, appellant chose to continue representing himself. Appellant then claimed that had he known the state would recommend an 18-month consecutive sentence, he would not have waived his right to counsel. Appellant asserted he waived his right to counsel because he thought "the most [he] would receive was six months consecutive." However, as noted earlier, that offer by the state was only open on January 5, 2005 and appellant rejected it. The record also indicates that appellant is no stranger to the criminal justice system, having been sentenced to his first prison term in 1981 when he was 17 years old.
 {¶ 19} We now turn to appellant's claim he was not aware of the nature of the charges against him when he waived his right to counsel. In the case at bar, appellant was indicted in January 2004 on one count of receiving stolen property. The record indicates that in May 2003, the Pickaway County Grand Jury indicted appellant on one count of receiving stolen property (a semi truck). In fact, appellant was out on bail waiting to go to trial in Pickaway County when he was charged in the case at bar. As in the case before us, appellant moved to represent himself pro se at his jury trial in Pickaway County. The Pickaway County Court of Common Pleas (the "common pleas court") emphatically tried to convince appellant otherwise. The common pleas court ultimately and reluctantly granted appellant's motion but not before it (1) fully explained to appellant the dangers of self-representation, (2) made clear that it would not assist appellant in presenting his defense and that he would be held to the same standards as an attorney, (3) asked appellant if he knew the maximum penalty for the charge, and (4) diligently explained to appellant his constitutional right to representation. Statev. Doyle, Pickaway App. No. 04CA23, 2005-Ohio-4072, ¶ 12-16.
 {¶ 20} Appellant was found guilty as charged by a Pickaway County jury. Appellant appealed his conviction on the ground, inter alia, that the common pleas court erred by allowing him to represent himself pro se. The Fourth Appellate District rejected appellant's claim and found that appellant had knowingly and intelligently waived his right to counsel. The appellate court noted that (1) "appellant's arguments at the hearing, and in his various pro se filings, indicate he was well aware of the general `nature' of the charges against him," (2) "appellant ably and capably pursued" alibi and mistaken identification defenses, and (3) "appellant insisted that he wanted to exercise his right of self representation and was emphatic that he be allowed to proceed in that manner." Id. at ¶ 15, 16, and 19.
 {¶ 21} In light of the foregoing, we find that although the trial court's inquiry as to appellant's desire to proceed pro se was inadequate under Gibson and Farreta, it cannot be said that but for the trial court's inadequate inquiry, appellant would not have waived his right to counsel. Rather, we find that contrary to his claims, appellant elected to proceed pro se in the case at bar fully knowing what he was doing and with his eyes open. Faretta, 422 U.S. at 835. And although he conducted "his own defense ultimately to his own detriment, his choice must be honored out of `that respect for the individual which is the lifeblood of the law.'" Id. at 834.
 {¶ 22} As this case shows, a criminal defendant's decision to represent himself is problematic for trial courts. On the one hand, "self-representation is an important right and a refusal to grant a defendant the right to appear pro se at trial may warrant a reversal. On the other hand, when a pro se defendant does not receive the desired outcome at trial, a court's decision to allow him to proceed pro se presents an easy target to raise on appeal." Doyle, Pickaway App. No. 04CA23 at ¶ 19.
 {¶ 23} We therefore urge trial courts to investigate as long and as thoroughly as needed before permitting a defendant to waive counsel and proceed pro se. As the supreme court stated inGibson, "the fact that an accused may tell [the court] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. Tobe valid such waiver must be made with an apprehension of thenature of the charges, the statutory offenses included withinthem, the range of allowable punishments thereunder, possibledefenses to the charges and circumstances in mitigation thereof,
and all other facts essential to a broad understanding of the whole matter." Gibson, 45 Ohio St.2d at 377. (Emphasis added.)
 {¶ 24} Thus, before permitting a defendant to waive counsel and proceed pro se, a trial court must ask the defendant if he knows the nature of the charges against him, the statutory offenses included within them, the range of allowable punishments thereunder, and possible defenses to the charges and circumstances in mitigation thereof. In addition, the defendant should also be advised of the following: (1) self-representation would be detrimental; (2) the defendant will be held to the same standards as an attorney; (3) thus, the defendant must follow all technical rules of substantive, procedural, and evidentiary law; (4) a defendant's lack of knowledge of evidentiary and procedural rules will not prevent the court from enforcing them; (5) the defendant's lack of knowledge of these rules may result in waiving review of certain issues on appeal; (6) if the defendant has any difficulty in presenting his defense and complying with procedural rules, the court cannot and will not assist him in the presentation of his case so that it is done properly; (7) the prosecution would be represented by an experienced attorney; (8) the right of self-representation is not a license to abuse the dignity of the courtroom; thus, if there is a disruption of the trial, the right to self-representation can be vacated; and (9) whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel. See Faretta,422 U.S. at 834; Doyle, Pickaway App. No. 04CA23 at ¶ 10.
 {¶ 25} In addition, trial courts should ask the defendant whether (1) he suffers from any physical or mental disease or disability; (2) is under the influence of drugs or alcohol; and (3) is forced to or was promised something in exchange for waiving his right to counsel. As this case pointedly shows, trial courts would also be well advised to ask a defendant whether he has represented himself before in a criminal prosecution. Finally, trial courts would be well advised to give a thorough and full written waiver of counsel complying with Gibson andFaretta, rather than a bare bone written waiver such as the one signed by appellant in this case.
 {¶ 26} In light of the foregoing, appellant's first assignment of error is overruled. We strongly emphasize, however, that our holding under this assignment of error is strictly limited to the facts of this case.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO PRESERVE ON RECORD FOR APPEAL THE POLICE REPORT SUBMITTED FOR IN CAMERA INSPECTION, IN VIOLATION OF CRIM.R. 16(B)(1)(g) AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 29} At trial, the state trooper who pulled over the speeding semi truck testified on behalf of the state. During his cross-examination of the trooper, appellant challenged the trooper's description of the fleeing suspect as being contradictory to earlier testimony by the trooper. At that point, and outside the presence of the jury, the trial court sua sponte examined the portion of the trooper's police report describing the suspect. The trial court then read that portion of the report into the record and found that there were no inconsistencies. Appellant argues that the trial court violated Crim.R. 16(B)(1)(g) and State v. Daniels (1982), 1 Ohio St.3d 69, when it neither preserved the report into the record nor gave appellant the opportunity to review the report.
 {¶ 30} Crim.R. 16(B)(1)(g) states:
 {¶ 31} "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 32} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 {¶ 33} "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
 {¶ 34} "Whenever the defense attorney is not given the entire statement, it shall be preserved in the record of the court to be made available to the appellate court in the event of an appeal."
 {¶ 35} The trial court found that there were no inconsistencies and this finding is not appealed by appellant. Under Crim.R. 16(B)(1)(g), only if a trial court determines that inconsistencies exist is the statement to be given to the defense for use in cross-examination. Because the trial court found no inconsistencies, appellant was not entitled to the report. Appellant argues, however, that he was entitled to the report under the Ohio Supreme Court's decision in Daniels. In that decision, the Supreme Court construed "Crim.R. 16(B)(1)(g) to mean that, once the trial court independently determines that a producible out-of-court witness statement exists, attorneys for all parties must be given the opportunity to inspect the statement personally. The trial court's simply permitting the attorneys to be passively present and available for consultation during the in camera inspection constitutes reversible error."Daniels, 1 Ohio St.3d at 70-71.
 {¶ 36} The holding in Daniels was, however, modified by the supreme court in State v. Cunningham, 105 Ohio St.3d 197,2004-Ohio-7007, as follows:
 {¶ 37} "In * * * Daniels, * * * we interpreted the `present and participating' provision in Crim.R. 16(B)(1)(g) as requiring, upon the granting of a defendant's timely motion for an in camera inspection, that attorneys for all parties be given the opportunity to `(1) inspect the statement personally; and (2) call to the court's attention any perceived inconsistencies between the testimony of the witness and the prior statement. (Crim.R. 16[B][1][g], construed and applied.)'
 {¶ 38} "* * * On its face, we concede that Daniels arguably could be read as establishing a per se rule of prejudicial error. In Daniels, we stated that the trial court's failure to afford defense counsel the opportunity to inspect the witness's statement personally and call to the court's attention any perceived inconsistencies constituted reversible error per se. Nevertheless, a closer reading of our decision in Daniels
indicates that more than counsel's exclusion from the in camera inspection is required to give rise to reversible error.
 {¶ 39} "The scope of our finding of prejudicial error per se in Daniels is clearly limited by the language `under the facts at bar.' In Daniels, we reviewed the pretrial statement and in-court testimony at issue and found that inconsistencies existed between the two. Had we intended to set forth a per se prejudicial-error rule, our review and finding would not have been necessary." (Citations omitted.) Cunningham,
105 Ohio St.3d at ¶ 45-47.
 {¶ 40} In Daniels, following the witness's direct testimony, defense counsel made a timely motion under Crim.R. 16 "for an in camera inspection of [the witness's] out-of-court statement with the prosecuting attorney and defense counsel `present and participating.'" Daniels, 1 Ohio St.3d at 69. Upon construing Crim.R. 16(B)(1)(g), the Supreme Court concluded that "under the facts at bar, the trial court's failure to afford defense counsel the opportunity to inspect the witness' statement personally" constituted reversible error per se. Id. at 71. In the case at bar, appellant never moved for an in camera inspection, let alone with the request that the prosecuting attorney and appellant be "present and participating." We therefore find that the holding in Daniels does not apply here, and that the trial court did not err by not giving appellant the opportunity to review the report.
 {¶ 41} Appellant also argues that the trial court erred by not preserving the report for appellate review as mandated under the last paragraph of Crim.R. 16(B)(1)(g). A similar argument was made in State v. Jenkins (1984), 15 Ohio St.3d 164. In that case, the defendant argued that the absence of the statement in the appellate record was not his fault as the rule required the lower court to preserve it. The Ohio Supreme Court, however, held: "The appellant has failed to demonstrate that he either requested this be done or objected in any manner to its omission. Neither report is before this court, and other than appellant's speculative conjecture, there is an absence of any showing of actual prejudice." Id. at 226.
 {¶ 42} As in Jenkins, appellant never requested that the report be preserved for review or objected to it not being preserved. Considering that appellant made the exact same argument to the Fourth Appellate District when he appealed his conviction in Pickaway County for receiving stolen property, appellant certainly could have asked that the report be preserved in the record or objected to it not being preserved. Appellant has failed to demonstrate prejudice and none will be presumed. See State v. Oliver (Sept. 3, 1997), Lorain App. No. 96CA006471. Appellant's second assignment of error is overruled.
 {¶ 43} Assignment of Error No. 3:
 {¶ 44} "THE TRIAL COURT ERRED BY SENTENCING MR. MORRIS [SIC] TO PRISON BASED ON FACTS NOT FOUND BY THE JURY OR ADMITTED BY MR. MORRIS [SIC]."
 {¶ 45} Appellant first argues that the trial court erred by imposing a nonminimum and consecutive term of imprisonment. InState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court held that portions of Ohio's sentencing scheme were unconstitutional. Among the statutory provisions found unconstitutional were R.C. 2929.14(B) and 2929.19(B)(2), concerning the imposition of more than a minimum prison term, and R.C. 2929.14(E) and 2929.41(A), governing the imposition of consecutive prison sentences. The Foster court severed these sections from the sentencing code and instructed that all cases pending on direct review in which the unconstitutional sentencing provisions were utilized must be remanded for resentencing. Id. at ¶ 104. Because the trial court utilized R.C. 2929.14(B) and (E) to sentence appellant, we must remand this case for resentencing consistent with Foster. See State v. Carpenter,
Butler App. No. CA2005-11-494, 2006-Ohio-4959.
 {¶ 46} Appellant, however, argues that the severance remedy outlined in Foster violates the ex post facto and due process clauses of the United States Constitution because it effectively raises the presumptive sentences for first-time offenders and those convicted of fourth and fifth degree felonies to the statutory maximum. Appellant notes that under the sentencing statute in effect during his sentencing, there was a presumption he would be sentenced to a minimum sentence of six months. Appellant contends that under Bouie v. Columbia (1964),378 U.S. 347, 84 S.Ct. 1697, the test is "whether the late action of the judiciary was unforeseeable at the time of the commission of the offense." Id. 354. Appellant argues that the Foster
decision erased a presumption that was beneficial to him, which was a remedy not anticipated.
 {¶ 47} At the outset, we note that we are bound by the supreme court's mandate in Foster, and thus, we must reverse and remand this case for resentencing, and will not direct the trial court to enter a specific sentence on remand. See State v.Smith, Montgomery App. No. 21004, 2006-Ohio-4405. Appellant will have the opportunity to present these arguments to the supreme court if he chooses to appeal from this decision. See State v.Newman, Summit App. No. 23038, 2006-Ohio-4082.
 {¶ 48} We further note that appellant's arguments have been rejected by Ohio appellate courts on two different grounds. Some appellate courts have rejected the arguments on the ground that the issues are not ripe for review until the defendant has been resentenced under Foster. See State v. Reid, Cuyahoga App. No. 87290, 2006-Ohio-3978; State v. Pitts, Allen App. No. 1-06-02, 2006-Ohio-2796.
 {¶ 49} Alternatively, the Second Appellate District addressed the arguments but rejected them as follows: "The federal appellate courts have addressed the ex post facto argument in relation to the United States Supreme Court's decision in UnitedStates v. Booker (2005), 543 U.S. 220[.] * * * [W]e find the Seventh Circuit [Court of Appeals'] rationale [in United Statesv. Jamison (C.A.7, 2005) 416 F.3d 538] applicable to Smith's situation in light of * * * Foster. Smith knew that his actions constituted a crime when he shot Dansby. The Ohio Supreme Court's decision to sever the provisions of the Ohio sentencing statutes in Foster affects Smith's punishment, not whether his actions constituted a criminal act. The statutory range of punishment Smith faced before the decision in Foster was between one and five years, and after Foster, Smith still faces between one and five years when his case is remanded for resentencing. Just as inJamison, Smith was aware of the possible sentence he faced when committing the crime of felonious assault, and therefore, we conclude that the Ohio Supreme Court's decision in Foster does not violate the ex post facto clause." Smith, Montgomery App. No. 21004, 2006-Ohio-4405, ¶ 33-34.
 {¶ 50} The same rationale applies here. Appellant knew his action constituted a crime when he received the stolen semi truck. The statutory range of punishment appellant faced before the decision in Foster was between six and 18 months, and afterFoster, appellant still faces between six and 18 months when his case is remanded for resentencing. Appellant was aware of the possible sentence he faced when committing the crime of receiving stolen property. We therefore find that Foster does not violate the ex post facto and due process clauses. In light of the foregoing, appellant's third assignment of error is sustained in part and overruled in part.
 {¶ 51} Judgment reversed as to sentencing only and remanded for resentencing.
Walsh, P.J., and Bressler, J., concur.
[1] The written waiver of counsel states: "I, Troy Doyle, * * * hereby voluntarily waive and relinquish my right to counsel, a right afforded to me under the Sixth Amendment to the U.S. Constitution and under the Ohio Constitution, and I elect to proceed without counsel to assist me and choose to represent myself. I fully understand that under the laws of this State I have a constitutional right to counsel to assist me in this matter."