[Cite as *State v. Meyers*, 2014-Ohio-1357.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


STATE OF OHIO,                          :        **O P I N I O N**

          Plaintiff-Appellee,          :

    - vs -                                :        **CASE NOS. 2013-L-042
                    and 2013-L-043**

ROBERT A. MEYERS,                      :

          Defendant-Appellant.      :


Criminal Appeals from the Painesville Municipal Court.
Case Nos. 13 CRB 149 and 13 TRD 497.

Judgment: Affirmed in part; reversed in part and remanded.


*Joseph P. Szeman*, Madison Village Law Director, 126 West Main Street, Madison, OH 44057 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH  44077 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1}   Appellant, Robert A. Meyers, appeals his convictions for improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16, and using weapons while intoxicated, in violation of R.C. 2923.15.  For the reasons that follow, the trial court's decision is affirmed in part, reversed in part, and remanded.

{¶2}   At approximately 12:20 a.m. on January 20, 2013, Madison Village Police Officer Michael Smith observed a red pick-up truck with heavily-tinted windows exiting

the highway. Officer Smith also observed that the rear license plate light was out. Officer Smith pulled the vehicle over to discuss these equipment violations with the driver. Before exiting his patrol car, Officer Smith entered the truck's license plate number in his mobile data terminal and determined that the owner, Robert Meyers, was licensed to carry a concealed firearm.

{¶3} Officer Smith's patrol car was equipped with a dashboard camera, which recorded the stop. The audio is very poor, apparently due to high winds. The video shows that Officer Smith approached the driver's side of the truck, and Meyers rolled down his window. Officer Smith asked Meyers for his license and proof of insurance. While Meyers was retrieving his paperwork, Officer Smith scanned the inside of the vehicle with a flashlight. Meyers handed his driver's license to Officer Smith; the officer examined the driver's license and inquired of Meyers where he was coming from and what he was doing that evening. Meyers' side of the conversation is almost entirely inaudible.

{¶4} Soon after the stop, and after this brief exchange, Meyers can be heard to say, "I have a concealed carry permit," to which Officer Smith responds, "all right, well do you have your weapon in here…oh yes you do." Officer Smith testified at that point he observed a handgun on the vehicle floor near the gas pedal. Officer Smith then drew his service revolver and ordered Meyers not to reach for the weapon and to keep his hands in plain sight. Officer Smith ordered Meyers to produce his insurance documents, which Meyers did. The officer then asked Meyers again to keep his hands on the steering wheel. It appears that Meyers did not comply with that request because

Officer Smith then immediately ordered Meyers out of the vehicle. Officer Smith handcuffed Meyers and ordered Meyers to stand against the side of the truck.

{¶5} Officer Smith proceeded to question Meyers about the handgun, to which Meyers replied that he did not have a handgun. Officer Smith requested back up, and he and Meyers continued to wait by the side of the truck. About five minutes later, Sergeant Matthew Byers arrived. Meyers was placed in the back of Officer Smith's patrol car. While in the patrol car, Officer Smith detected an odor of alcohol, which he had not previously detected due to the high winds outside. Sergeant Byers requested Meyers perform a field sobriety test, which Meyers refused. Officer Smith took pictures of the inside of the truck; he noted that the handgun's action was open with the slide locked back and that there was a fully-loaded magazine and a holster on the floor near the driver's seat. A second loaded magazine was discovered in the glove compartment during the vehicle inventory search that followed Meyers' arrest.

{¶6} Officer Smith and Sergeant Byers both testified that Meyers smelled of alcohol, had slurred speech, and repeated questions many times, apparently either not remembering or understanding the questions. According to the officers, Meyers also had trouble understanding basic concepts, e.g., the reason for his arrest. Meyers was informed that he was under arrest, Mirandized, and transported to the jail.

{¶7} Meyers was charged in Painesville Municipal Court with using weapons while intoxicated and improperly handling firearms in a motor vehicle. Meyers was also cited for unlawful window tint and for not having any rear license plate illumination. Meyers pled not guilty to all charges.

3

**{¶8}** Meyers filed several pretrial motions, pro se, including a motion for appointment of counsel. In addition, he filed a written demand for jury trial. On March 12, 2013, the court held a pretrial hearing concerning Meyers' pro se motions, including his motion to compel discovery. For Meyers' benefit, the trial court had a public defender present for this hearing. Meyers indicated he wished to proceed pro se at the pretrial hearing and that he had a suppression motion he wanted to file. He said he did not want counsel for the suppression hearing, even though the trial court encouraged him to take advantage of the attorney the trial court provided for him. Meyers indicated that he wanted counsel for the jury trial. The court discussed the charges, ensuring Meyers understood the charges against him and what the state would have to prove at trial. The court told Meyers he would be wise to take advantage of appointed counsel because he would otherwise get lost in procedure. At the end of the pretrial hearing, the trial court appointed counsel and granted a continuance so that Meyers could consult with counsel about the suppression motion.

**{¶9}** A suppression motion was subsequently filed, and a hearing was held on that motion on March 26, 2013. Meyers again refused counsel's assistance at this hearing and argued the suppression motion himself, though counsel was available and in court. The trial court granted the suppression motion in part and denied it in part. The trial court held that any statements Meyers made after Officer Smith placed him in the patrol car, but before Meyers was made aware of his *Miranda* rights, would be suppressed. At the end of the suppression hearing, the issue of appointed counsel was again addressed:

> Prosecuting Attorney: The silent record could be a problem.

The Court: Yeah, he had indicated before that he did not wish to have counsel at the motion to suppress. He had counsel available. Obviously he has not availed himself of that counsel even though a counsel is in court and available. And, Mr. Meyers, you obviously by your actions have chosen not to have an attorney sit with you; is that correct?

Mr. Meyers: Correct.

The Court: I have appointed one for the jury trial. She is here in the courtroom and, once again, the offer is there, but by action in action alone if you do not wish to have the attorney present, it's entirely up to you.

{¶10} On the day of trial, Meyers signed an "Acknowledgment of Rights and Waiver of Counsel." Meyers represented himself at trial, but had standby counsel available throughout the proceedings. Meyers was convicted by a jury of improperly handling firearms in a motor vehicle and using weapons while intoxicated. The judge also found Meyers guilty of the two minor misdemeanor traffic violations.

{¶11} Appellant, now represented by counsel, filed a notice of appeal and asserts five assignments of error. Appellant's first assignment of error states:

{¶12} "The trial court erred when it permitted the defendant-appellant to represent himself without first obtaining an effective waiver of his constitutional right to counsel."

{¶13} In his first assignment of error, appellant contends that the trial court erred in failing to conduct the proper inquiry to determine whether his waiver of counsel was made voluntarily, knowingly, and intelligently. Appellant argues his waiver was not voluntary, knowing, and intelligent and was thus ineffective. Considering the totality of the record, we find that appellant gave an effective waiver.

5

{¶14} *Faretta v. California*, 422 U.S. 806 (1975) holds that a defendant seeking to waive his right to counsel and represent himself must "knowingly and intelligently forgo" the benefits of counsel.

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'

*Id.* at 835 (citation omitted). "Once the right to counsel is properly waived, trial courts are permitted to appoint standby counsel to assist the otherwise pro se defendant" even over the defendant's objections. *State v. Martin*, 103 Ohio St.3d 385, 390 (2004).

{¶15} Appellant was charged with petty offenses. A "petty offense" is an offense for which the maximum penalty is up to six months confinement. *See* Crim.R. 2(C) and (D). The highest level offense with which appellant was charged was a misdemeanor of the first degree. Trial courts are not permitted to impose a sentence for more than six months on a first-degree misdemeanor. *See* R.C. 2929.24(A)(1) (exceptions inapplicable). In a petty offense case, waiver of counsel must be made in open court and recorded by means of shorthand, stenotype, or other adequate mechanical device; but unlike a waiver in a "serious" offense case, it need not be in writing. Crim.R. 22; Crim.R. 44.

{¶16} Meyers stated many times on the record that he wished to proceed pro se. On May 3, 2013, the day of trial, Meyers signed a form entitled, "Acknowledgment of Rights and Waiver of Counsel," which is typically used for those pleading guilty or no contest, and was annotated to indicate that Meyers was pleading not guilty. Crim.R. 22 was more than satisfied, in that a writing is not typically required in these circumstances.

6

It is clear from Meyers' various in-court statements and from the form he signed on the trial date that he wished to proceed pro se. *See* Crim.R. 44(C). Thus, we must determine whether Meyers was sufficiently informed to have made such waiver voluntarily, knowingly, and intelligently.

{¶17} In *State v. Foy*, 5th Dist. Stark No. 2006-CA-00269, 2007-Ohio-6578, the Fifth Appellate District concurred with the Fourth Appellate District's assessment of the difficult situation a trial court faces when a litigant insists on self-representation:

> We note, 'a criminal defendant's decision to represent himself is generally problematic for trial courts. On the one hand, self-representation is an important right and a refusal to grant a defendant the right to appear pro se at trial may warrant a reversal. On the other hand, when a pro se defendant does not receive the desired outcome at trial, a court's decision to allow him to proceed pro se presents an easy target to raise on appeal. This is not a case in which a defendant has been denied counsel, nor is it a situation in which we must discern whether a defendant impliedly waived counsel. To the contrary, in the instant case appellant insisted that he wanted to exercise his right of self-representation and was emphatic that he be allowed to proceed in that manner. The trial court implored him not to proceed on his own and, even after it permitted him to do so, directed that his public defender remain available to assist him.

*Id.* at ¶21, quoting *State v. Doyle*, 4th Dist. Pickaway No. 04 CA 23, 2005-Ohio-4072, ¶19. *Doyle* indicates Ohio courts have rejected a "checklist approach" to determine whether a defendant made a voluntary, knowing, and intelligent waiver of his right to counsel. *Id.* at ¶11. Instead, Ohio appellate courts consider whether the totality of the circumstances demonstrates that the defendant understood the nature of the charges, possible defenses, and seriousness of the waiver. *Id.* The circumstances we must consider include whether the record shows that the defendant was aware of the nature of the charges, defenses available thereto, and possible penalties; the defendant's

7

familiarity with the criminal justice system; and whether the defendant was advised of his right to representation and the dangers of self-representation. *Id.* at ¶11-17.

{¶18} Here, as in *Foy*, *supra*, we are neither faced with a situation in which a defendant has been denied counsel nor with a situation in which we must determine whether a defendant impliedly waived counsel. The trial court informed Meyers that he had a right to counsel, of which it would "be wise" to take advantage, and offered Meyers additional time to secure counsel. Even though the trial court permitted Meyers to proceed pro se, counsel was always available to him in court. Nonetheless, Meyers insisted on presenting and arguing his own case. Meyers filed and argued numerous motions that demonstrate he knew the nature of the charges against him and what the state had to prove in order to convict him.

{¶19} A review of the record shows that Meyers waived his right to counsel "with eyes open." *Faretta*, *supra*. At the pretrial hearing, the court discussed with Meyers what the state would be required to prove with regard to the charge of using weapons while intoxicated and the burden of proof. Meyers' pleadings reflect an understanding of court procedure. Furthermore, at trial, Meyers argued the state could not prove that he was intoxicated or that he was in possession of a handgun. As intoxication and possession of a handgun were the central elements of the state's case, it is clear that Meyers understood the nature of the charges and available defenses. Meyers signed a form acknowledging that he faced jail time if convicted, which shows that he was aware of the possible punishments. The trial court advised Meyers that it would be in his best interest to take advantage of counsel and explained his right to have counsel appointed at no cost to him. The trial court ensured that counsel was available to Meyers at all

8

times, but he did not avail himself of counsel's aid. Thus, taking into account the totality of the circumstances, it is clear that Meyers was not deprived of counsel and that he voluntarily, knowingly, and intelligently waived his right to counsel. *Doyle*, *supra*, at ¶11.

{¶20} Meyers' first assignment of error is without merit.

{¶21} Meyers' second assignment of error states:

{¶22} "The trial court erred when it denied the defendant-appellant's motion to suppress statements made to the police in violation of his constitutional rights to the assistance of counsel and against self-incrimination."

{¶23} In his second assignment of error, Meyers argues that "the trial court erred by failing to suppress the statements he made during the time when he was removed from his truck and prior to being placed within the police cruiser." We find no error in the trial court's decision regarding suppression of statements made by Meyers.

{¶24} Appellate review of a trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154, 2003-Ohio-5372. We accept the trial court's findings of fact when they are supported by competent, credible evidence. *State v. Guysinger*, 86 Ohio App.3d 592, 594 (4th Dist.1993). If the trial court's findings of fact are supported by the record, we review the trial court's application of the law to those facts de novo. *State v. Djisheff*, 11th Dist. Trumbull No. 2005-T-0001, 2006-Ohio-6201, ¶19.

{¶25} "A police officer may lawfully stop a vehicle, motorized or otherwise, if he has a reasonable, articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation." *State v. Roberts*, 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶14. The United States Supreme Court has held that routine

9

traffic stops are more "analogous to a so-called 'Terry stop,' than to a formal arrest" and that police conducting a traffic stop, similar to police conducting a Terry stop, "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, 468 U.S. 420, 439-440 (1984). The Court further stated:

> The comparatively nonthreatening character of [Terry stops] explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda.

Id. at 440.

{¶26} Ohio courts have similarly held that "routine roadside questioning of a driver during an ordinary traffic stop does not constitute a custodial interrogation requiring Miranda warnings." E.g., State v. Brown, 2d Dist. Montgomery No. 25204, 2012-Ohio-5532, ¶10. In the interest of officer safety, such questioning may include whether the person detained is in possession of a firearm. Id. at ¶11, citing State v. Lenoir, 2d Dist. Montgomery No. 12646, 1997 Ohio App. LEXIS 2494 (June 6, 1997).

{¶27} It is important to note that following the suppression hearing, the trial court granted Meyers' motion to suppress in part and denied it in part. The trial court suppressed any statements made from the time Meyers was placed in Officer Smith's patrol car until Meyers was Mirandized. Meyers argues that "the trial court erred by failing to suppress the statements he made during the time when he was removed from his truck and prior to being placed within the police cruiser." Meyers does not indicate any particular statements that he believes should have been suppressed. During the relevant time, however, Meyers made statements denying knowledge of any firearm in

his vehicle, denying that concealed carry licensees are required to announce their status and the presence of weapons in their vehicles during traffic stops, denying that he was intoxicated, and questioning whether Officer Smith had any basis for the stop that could be proved in court.

{¶28} The trial court did not err by holding that the statements made before Meyers was placed in Officer Smith's patrol car were admissible. These statements were made during the temporary detention incident to the traffic stop, which is not subject to the dictates of *Miranda*. *See Berkemer*, *supra*. Officer Smith was permitted to ask "a moderate number" of questions to establish Meyers' identity and to confirm or dispel suspicion of criminal activity before determining whether to arrest Meyers. Officer Smith's questions did not go beyond the permissible scope of the traffic stop.

{¶29} Officer Smith ordered Meyers out of his vehicle and handcuffed him during the questioning outside the vehicle. At that point, Meyers denied having a firearm in the vehicle. The officer knew this to be false, as he had observed a firearm in plain view.

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Terry v. Ohio*, 392 U.S. 1, 24 (1968). Officer Smith took reasonable steps to ensure his safety while investigating the facts and circumstances of the situation. Most significantly, Meyers fails to point to any statements that could be considered "incriminating" that the trial court did *not* suppress.

{¶30} Meyers' second assignment of error is without merit.

{¶31} Meyers' third assignment of error states:

11

**{¶32}** "The defendant-appellant was deprived of his constitutional rights to fair trial and due process when the trial court failed to give an accurate jury instruction regarding the improper handling of firearms in a motor vehicle."

**{¶33}** In this assignment of error, Meyers contends that the trial court's jury instruction on the charge of improperly handling a firearm in a motor vehicle amounts to plain error. First, Meyers contends that the trial court instructed the jury to apply a statute inapplicable to Meyers, who was licensed to carry concealed firearms, and that the jury did in fact rely upon that statute in reaching its verdict. Second, Meyers contends that the trial court instructed the jury on the basis of an obsolete version of the applicable statute, which is materially different from the version in force at the relevant time. Third, Meyers contends that the trial court failed to instruct the jury on the statutory privileges granted to persons licensed to carry concealed firearms.

**{¶34}** At trial, Meyers did not object to the jury instructions and has therefore waived all but plain error on review. *State v. Skatzes*, 104 Ohio St.3d 195, 205, 2004-Ohio-6391. In criminal appeals where no objection was made to erroneous jury instructions, the Ohio Supreme Court permits the use of plain error doctrine to reverse a conviction only when, but for the error, the outcome of the trial clearly would have been otherwise. *Id.*

**{¶35}** The decision to use a particular jury instruction in a criminal case lies within the sound discretion of the trial court and cannot form the basis for reversal unless an abuse of discretion took place. *State v. Nichols*, 11th Dist. Lake No. 2005-L-017, 2006-Ohio-2934, ¶28. As a general proposition, a jury instruction is proper if it

gives a plain and unambiguous statement of the law pertinent to the case in light of the pleadings and the evidence. *Id.* at ¶30.

{¶36}  A review of the record shows that Meyers was charged with, tried for, and convicted of violating R.C. 2923.16(C).  The version of that statute applicable to Meyers states, in relevant part:

> (C) No person shall knowingly transport or have a firearm in a motor vehicle unless the person may lawfully possess that firearm under applicable law of this state or the United States, the firearm is unloaded, and the firearm is carried in one of the following ways: (1) in a closed package, box, or case; (2) in a compartment that can be reached only by leaving the vehicle; (3) in plain sight and secured in a rack or holder made for the purpose[.]

{¶37} Evidence was presented that Meyers had a handgun and ammunition unsecured in his vehicle and within reach of the driver.  Relevant to Meyers' argument and to the charge in this case is the provision contained in R.C. 2923.16(F)(5).  The version of that section in effect at the time of the offense provided as follows, with emphasis added:

> Divisions (B) and (C) of this section do not apply to a person who transports or possesses a handgun in a motor vehicle if, at the time of that transportation or possession, both of the following apply:
>
> (a) The person transporting or possessing the handgun *is carrying* a valid license or temporary emergency license to carry a concealed handgun issued to the person under section 2923.125 or 2923.1213 of the Revised Code or a license to carry a concealed handgun that was issued by another state with which the attorney general has entered into a reciprocity agreement under section 109.69 of the Revised Code.
>
> (b) The person transporting or possessing the handgun is not knowingly in a place described in division (B) of section 2923.126 of the Revised Code.

13

{¶38} Therefore, Meyers could not be charged with a violation of R.C. 2923.16(C) if the provisions of R.C. 2923.16(F)(5)(a) and (b) apply. The first question in that regard is whether Meyers was *carrying* a valid license at the time of the stop. The language of R.C. 2923.16(F)(5)(a) is clear that the offense contained in R.C. 2923.16(C) "does not apply" to an individual carrying a valid license. However, the record is silent as to whether a valid license was ever requested or produced. Therefore, we must determine whether it was the state's burden to offer some evidence that Meyers was not carrying a valid license or whether Meyers carried the burden as an affirmative defense.

{¶39} Affirmative defenses in criminal cases are defined in R.C. 2901.05(D)(1) as either "(a) A defense expressly designated as affirmative; [or] (b) A defense involving an excuse or justification *peculiarly within the knowledge of the accused*, on which the accused can fairly be required to adduce supporting evidence." (Emphasis added.)

{¶40} The Ohio legislature has specifically enumerated affirmative defenses with regard to a violation of R.C. 2923.16:

> (G)(1) The affirmative defenses authorized in divisions (D)(1) and (2) of section 2923.12 of the Revised Code are affirmative defenses to a charge under division (B) or (C) of this section that involves a firearm other than a handgun.
>
> (2) It is an affirmative defense to a charge under division (B) or (C) of this section of improperly handling firearms in a motor vehicle that the actor transported or had the firearm in the motor vehicle for any lawful purpose and while the motor vehicle was on the actor's own property, provided that this affirmative defense is not available unless the person, immediately prior to arriving at the actor's own property, did not transport or possess the firearm in a motor vehicle in a manner prohibited by division (B) or (C) of this section while the motor vehicle was being operated on a street, highway, or other public or private property used by the public for vehicular traffic.

14

{¶41} In a similar case, the First District Court of Appeals held that an exemption did not have to be established by the state in a prosecution for carrying a concealed weapon. *State v. Washington,* 1st Dist. Hamilton No. C-810917, 1982 Ohio App. LEXIS 12701. The First District held: "We have previously held that '[a] person accused of violating a penal statute which contains an exemption has the burden of proving, by a preponderance of the evidence, that he is within such exemption.'" *Id.* at *3.

{¶42} In addition, the Ohio Supreme Court has considered a similar provision concerning the burden to establish an exemption from prosecution due to a specific statutory provision. In *State v. Frost*, 57 Ohio St.2d 121, 128, the Court stated:

> The [defendant], in this cause, sought to avoid criminal liability for violating the Ohio Securities Act by claiming the protection of the exemption provided in R.C. 1707.03(B). It is not unconstitutional to require a defendant to carry the burden of proof in such a case, because it does not require the defendant to negate any facts of the crime which the state must prove in order to convict.

{¶43} Therefore, we hold it was Meyers' burden to establish that he had his license with him at the time he was stopped, which would have rendered R.C. 2923.16(C) inapplicable to him. Meyers' contention that he could not be convicted of a violation of R.C. 2923.16(C) is without merit.

{¶44} This does not, however, end the inquiry regarding the conviction for this charge. Adding to the confusion in this case is the fact that the trial court also instructed the jury on a prior version of R.C. 2923.16(C), which was inapplicable to Meyers, *and* on a violation of R.C. 2923.16(E)(1), which sets forth offenses by those who have been issued a valid license. However, Meyers was not charged with violating R.C. 2923.16(E)(1). It is unknown whether the jury returned its verdict as a result of this instruction, or on the erroneous instruction regarding R.C. 2923.16(C). Either way, it

15

was plain error to give an instruction on a prior version of the applicable statute and an offense for which the defendant was not charged.

{¶45} Meyers' third assignment of error has merit to the extent indicated. There was plain error in the instructions to the jury, entitling Meyers to a new trial on that charge. On remand, in the event of a new trial, the jury should be instructed on the relevant version of R.C. 2923.16(C).

{¶46} Meyers' fourth assignment of error states:

{¶47} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶48} Meyers contends that his convictions for improperly handling firearms in a motor vehicle and using a weapon while intoxicated are against the manifest weight of the evidence. As Meyers' conviction for improperly handling firearms in a motor vehicle has already been reversed, this assignment of error is moot with regard to that charge. Thus, we consider only the manifest weight challenge to Meyers' conviction for using a weapon while intoxicated. For the reasons that follow, we find this conviction not against the manifest weight of the evidence.

{¶49} When a criminal defendant contends that a verdict is against the manifest weight of the evidence, an appellate court acts as a "thirteenth juror," reweighing the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Lee*, 6th Dist. No. L-06-1384, 2008-Ohio-253, ¶12. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed

16

and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983). Reversal on the grounds that a conviction was against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶50} In this case, the evidence does not weigh heavily against a conviction for using a weapon while intoxicated. Meyers was charged under R.C. 2923.15(A), which states: "(A) No person, while under the influence of alcohol or any drug of abuse, shall carry or use any firearm or dangerous ordnance." The trial court properly instructed the jury that in order to find that Meyers was "under the influence" of alcohol or drugs at the time of the offense, it must be established that he used alcohol or drugs in such quantity that it "adversely affected his actions or mental process to deprive him of that clearness of intellect and control" which he otherwise would have had.

{¶51} The testimony of Officer Smith and Sergeant Byers was that Meyers smelled of alcohol, had blood shot and glassy eyes, repeated himself, had difficulty following instructions, and difficulty understanding and remembering statements, questions, and answers. Meyers refused a request to perform field sobriety tests. Sergeant Byers testified, based on over 200 OVI arrests and his extensive experience with people who have been drinking and show signs of intoxication, it was his opinion that Meyers was over the legal limit to be driving. He added that Meyers was "certainly too intoxicated to be handling a firearm." Meyers was the driver and sole occupant of the truck in which a handgun and ammunition were recovered from the vehicle floor near the driver's seat. Contrary to Meyers' assertions at trial and on appeal, the results of a field sobriety test are not required to establish that a defendant was intoxicated.

*State v. Scandreth*, 11th Dist. Trumbull No. 2009-T-0039, 2009-Ohio-5768, ¶71 (citations omitted).

**{¶52}** Meyers' fourth assignment of error is without merit.

**{¶53}** Meyers' fifth assignment of error states:

**{¶54}** "The trial court sentenced the defendant-appellant contrary to law."

**{¶55}** Under this assignment of error, Meyers argues "[t]he trial court erred when it sentenced the defendant-appellant as having committed a first-degree misdemeanor improper handling of firearms in a motor vehicle where, pursuant to R.C. 2923.16(I), the defendant-appellant was convicted of a minor misdemeanor."

**{¶56}** R.C. 2923.16(I) provides, in pertinent part:

> If at the time of the stop of the offender for a traffic stop, * * * any law enforcement officer involved with the stop * * * had actual knowledge of the offender's status as a licensee, a violation of division (E)(1) or (2) of this section is a minor misdemeanor, and the offender's concealed handgun license shall not be suspended pursuant to division (A)(2) of section 2923.128 of the Revised Code.

**{¶57}** It was never established in the record whether Meyers had a valid license at the time this incident occurred. There was some testimony that when the officer ran Meyers' vehicle registration, he received information that the owner of the vehicle had a carry and conceal license issued to him. However, there is no indication that the license was still in effect or in Meyers' possession at the time of the stop.

**{¶58}** The fact that the officer might have known that Meyers had been issued a concealed carry permit is irrelevant if Meyers was not in compliance with the statute, e.g., that he carry the license with him. *See* R.C. 2923.126(A). As indicated above,

Meyers did not meet his burden of establishing compliance; nothing in the record suggests he had his license with him.

{¶59} Meyers' fifth assignment of error is without merit.

{¶60} For the foregoing reasons, Meyers' conviction for improperly handling a firearm in a motor vehicle is reversed and remanded for a new trial. Meyers' conviction for using weapons while intoxicated is affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.