DECISION AND JUDGMENT ENTRY
{¶ 1} This matter comes before the court on appeal from the Lucas County Court of Common Pleas. Upon a thorough review of the record, we affirm appellant's conviction but reverse and remand the case to the trial court for a determination of appellant's ability to pay the ordered fees.
 {¶ 2} The facts giving rise to this appeal are as follows. On December 27, 2002, Jeffrey Whitaker, an employee of Pizza Hut, was attempting to deliver an order to an address in an apartment complex when three males approached him, hit him in the face and ran off with the undelivered pizzas. Whitaker later identified appellant, Timothy J. Lamonds, as the male who hit him. Following a jury trial, appellant was found guilty of robbery, a violation of R.C. 2911.02(A) (2) and a felony of the second degree. He was sentenced to prison for four years. Appellant now appeals setting forth the following assignments of error:
 {¶ 3} "I. The jury instructions given by the court were prejudicial to the defendant-appellant, thereby denying him due process of law.
 {¶ 4} "II. The defendant-appellant was denied the effective assistance of counsel at trial, in violation of his sixth amendment rights.
 {¶ 5} "III. Defendant-Appellant's conviction is against the manifest weight of the evidence.
 {¶ 6} "IV. Defendant-Appellant's conviction is supported by insufficient evidence and thereby denies him his right to due process as guaranteed by the ohio and united states constitutions.
 {¶ 7} "V. Defendant-Appellant's sentence should be reversed as the trial court failed to comply with the mandates of revised code 2919.14[sic].
 {¶ 8} "VI. The trial court erred when it ordered the defendant-appellant to pay the cost of prosecution, and other costs as permitted under R.C. 2929.18(A)(4)."
 {¶ 9} Initially, we will address appellant's third and fourth assignments of error together. Appellant contends that his conviction is against the manifest weight of the evidence and that his conviction is based on insufficient evidence.
 {¶ 10} In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, we must determine whether the state has presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390; State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley (1978), 56 Ohio St.2d 169,State v. Barnes (1986), 25 Ohio St. 3d 203.
 {¶ 11} R.C. 2911.02(A)(2) provides that: "[N]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 12} "(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;"
 {¶ 13} Whitaker testified at trial that at approximately 11:00 p.m. on December 27, someone called his place of employment and ordered three large pizzas to be delivered to 2055 Alexis in Toledo, Ohio. Before leaving with the pizzas, Whitaker called the customer to verify the order. The customer told him that the apartment number was D4. When Whitaker arrived at the apartment, he rang the doorbell. As he was waiting for someone to answer the door, he was approached by three males he described as "one white male" * * * "one lighter skinned black male" * * * and "one darker skinned black male." Without saying anything, Whitaker testified, the "darker skinned black male" hit him in the left jaw area. The white male grabbed Whitaker's pizza bag and the three males ran from the scene. As a result of the assault, Whitaker suffered three chipped teeth.
 {¶ 14} Whitaker testified that after he was hit, he felt dazed for a second. He then turned to look at the male that hit him. His assailant was standing two feet away. Whitaker testified that the male was wearing a hooded sweatshirt. Whitaker could not see the male's ears because of the hood but he could see the male's face from the point of his eyebrows down. Whitaker estimated him to be of medium build and between 5'8" and 5'10". Whitaker returned to Pizza Hut and called the police. The next day, a police officer stopped by the restaurant and asked Whitaker to look at a white male sitting in the back of the officer's cruiser. The officer wanted to know if the man in the cruiser was one of the three that had robbed appellant. Whitaker testified that the man looked familiar but he was not one of the three that had robbed him.
 {¶ 15} Approximately a week later, Detective Daniel Navarre of the Toledo Police Department contacted Whitaker and told him that the police had some suspects in custody. Navarre showed Whitaker a photo array and Whitaker selected a photo of appellant and identified him as the man who hit him. Whitaker also identified appellant in open court as the man who hit him on December 27.
 {¶ 16} Officer Lawrence Shirey of the Toledo Police Department testified that he was on duty the night of December 27, 2002, when an anonymous caller alerted police to three suspicious males who were seen running from 2055 Alexis with a pizza delivery bag. Within minutes, police received another call indicating that a pizza delivery man had been robbed in the same area. Shirey testified he went to the Pizza Hut and interviewed the victim, Jeffrey Whitaker. Whitaker gave Shirey the telephone number that was given when the pizza order was placed. Shirey had his dispatcher cross-index the phone number and he soon had the address of 2055 West Alexis, Apartment C7. Shirey went to the apartment where he found the resident, Daniel Jernigan and an unknown female. Jernigan told Shirey that two men had come to his door earlier that evening and asked if they could use his phone. They then ordered pizza and left. Jernigan's description of the men matched the description of the robbers given by Whitaker. Jernigan gave Shirey permission to look around his apartment. Shirey testified he saw no evidence of pizza or any other males in the apartment.
 {¶ 17} While interviewing Jernigan, Shirey was contacted by Detective Navarre who informed him that Jernigan had two outstanding felony warrants from the state of Michigan. Based on this information, Shirey took Jernigan into custody. Before transporting Jernigan to the jail, Shirey testified, he drove Jernigan over to the Pizza Hut to see if Whitaker could identify Jernigan as one of the robbers. Whitaker told Shirey that Jernigan was not one of the three men.
 {¶ 18} Shirey testified that a few nights later, he was called out to the same location. Specifically, someone called to report a suspicious vehicle with three occupants. Shirey drove to the apartment building and saw three males standing on the front porch. Shirrey stayed in his cruiser as the males approached. Shirey testified that one of the males was white, one was a light skinned African American and one was a dark skinned African American. The males told Shirey they did not live in the apartment building but that they were there to see "Danny" in apartment C7. Two of the males claimed to be 17 years old. As it was after midnight, the two were in violation of the city's curfew law. The third male had outstanding warrants for his arrest. Consequently, all three were taken into custody and transported to the police station. At the station, one of the juveniles admitted that he had lied about his age and that he was actually 19 years old. Shirey also testified that at the station, Jernigan was brought from his cell in the county jail to the police station to identify the two men who had ordered pizza from his phone. Jernigan, who only saw two of the males, identified two of the men that Shirrey had arrested. One of those men was appellant. In open court, Shirey identified appellant as the male who originally lied about his age.
 {¶ 19} Jernigan testified that he is currently incarcerated in Monroe County Michigan for a probation violation. He testified that he did not know the two men who borrowed his phone the night of December 27, 2002. In open court, Jernigan identified appellant as one of the men who borrowed his phone.
 {¶ 20} Detective Navarre testified that days after the robbery, he compiled a photo array of six African American males, including a photo of appellant. Navarre testified that Whitaker selected appellant's photo and identified him as the man who punched and robbed him.
 {¶ 21} Appellant contends that the evidence against him is underwhelming. The jurors in this case heard testimony from the victim who identified appellant as the man who robbed him. Jurors can pick and choose what and who they wish to believe. The jurors in this case obviously chose to believe the testimony of Whitaker. On review, we cannot say that in doing so the jury clearly lost its way or perpetrated a manifest miscarriage of justice.
 {¶ 22} With regard to the sufficiency of the evidence, appellant contends that Whitaker's identification of him is suspect in that Whitaker only saw his assailant for a brief moment. Whitaker testified that appellant punched him while appellant's friend took the pizzas. The men then ran away. Whitaker was able to give Officer Shirey a description of his assailant's face and the clothing he wore. Whitaker testified that after he was hit, he looked at his assailant. He also testified that "he tried to get a good look" at the men as they were running away. In viewing the evidence in a light most favorable to the prosecution, this testimony, if believed, establishes the elements of robbery.
 {¶ 23} Accordingly, appellant's third and fourth assignments of error are found not well-taken.
 {¶ 24} In his first assignment of error, appellant contends that the court erred in failing to instruct the jury on the testimony of a co-conspirator. Appellant, in his brief, has failed to identify which of the witnesses in this trial qualifies as a co-conspirator. Based on the trial transcripts, this court must assume that appellant deems Daniel Jernigan a co-conspirator. Appellant did not object to the jury instructions at trial.
 {¶ 25} "[A] court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." State v. Guster (1981), 66 Ohio St.2d 266, 271. Further, a determination as to jury instructions is a matter left to the sound discretion of the trial court. Guster, supra. Absent plain error, a failure to object to a jury instruction during trial constitutes a waiver of any error attached to the instruction. State v. Twyford, (2002),94 Ohio St.3d 340, 349. "Plain error" has been defined as:
 {¶ 26} "Obvious error prejudicial to a defendant neither objected to nor affirmatively waived by him, which involves a matter of great public interest having substantial adverse impact on the integrity of and the public's confidence in judicial proceedings. The error must be obvious on the records, palpable, and fundamental, and in addition it must occur in exceptional circumstances where the appellate court acts in the public interest because the error affects `the fairness, integrity or public [**10] reputation of judicial proceedings.'" State v. Craft (1977),52 Ohio App.2d 1, 7, quoting United States v. Atkinson (1936),297 U.S. 157, 160, 56 S. Ct. 391, 392, 80 L.Ed. 555.
 {¶ 27} In the present case, Daniel Jernigan testified that he did not know the three men who came to his door on December 27, 2002. He did, however, introduce himself to them that night. Officer Shirey testified that he searched Jernigan's apartment and found no evidence that Jernigan was involved in the robbery. Detective Navarre testified that early on in his investigation, Jernigan was a suspect in the robbery. Navarre testified that he now believes Jernigan told the truth when he testified that he was not involved in the planning of the robbery. Based on the forgoing evidence, we conclude that the trial court's failure to include a co-conspirator instruction did not constitute error, plain or otherwise. Appellant's first assignment of error is found not well-taken.
 {¶ 28} In his second assignment of error, appellant contends that he was denied effective assistance of counsel.
 {¶ 29} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. * * * Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674,104 S. Ct. 2052. Accord State v. Smith (1985), 17 Ohio St.3d 98, 100.
 {¶ 30} Scrutiny of counsel's performance must be deferential.Strickland v. Washington at 689. In Ohio, a properly licensed attorney is presumed competent and the burden of proving ineffectiveness is the defendant's. State v. Smith, supra. Counsel's actions which "might be considered sound trial strategy," are presumed effective. Strickland v.Washington at 687. "Prejudice" exists only when the lawyer's performance renders the result of the trial unreliable or the proceeding unfair. Id. Appellant must show that there exists a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. See Id. at 694. See, also, State v. Lott (1990),51 Ohio St.3d 160, for Ohio's adoption of the Strickland test.
 {¶ 31} Appellant contends his counsel was deficient in failing to request a jury instruction on the testimony of a co-conspirator. Given our discussion of the evidence in appellant's first assignment of error, appellant's second assignment of error is found not well taken.
 {¶ 32} In appellant's fourth assignment of error, appellant contends that the trial court failed to comply with the mandates of R.C. 2929.14(B).
 {¶ 33} Pursuant to R.C. 2929.14(B), if the trial court elects to impose a prison sentence on a felony offender, "the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 34} "(1) the offender was serving a prison term at the time of the offense, or the offender previously had served a prison term."
 {¶ 35} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 36} Appellant was convicted of robbery, a felony of the second degree. R.C. 2929.14(A) (2) states: "[F]or a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years."
 {¶ 37} Although, in sentencing appellant to four years in prison, the court did not impose the shortest prison term authorized, the court acknowledged a thorough review of appellant's pre-sentence investigation report and stated on the record:
 {¶ 38} "Here at 19 years of age, and you may not realize it, but you now have 11 criminal convictions. Eleven, sir. You've already been to the penitentiary."
 {¶ 39} In that the court found that appellant had already served a prison term in compliance with R.C. 2929.14(A) (2), appellant's fifth assignment of error is found not well-taken.
 {¶ 40} In appellant's sixth and final assignment of error, appellant contends that the trial court erred in ordering him to pay the cost of prosecution and other costs permitted under R.C. 2929.18(A)(4). Appellant contends that the court must first determine, on the record, a defendant's present or future ability to pay before issuing such an order.
 {¶ 41} Initially we note that an indigent defendant may be held responsible for prosecution costs imposed pursuant to R.C. 2947.23 when convicted for a felony. State v. White (2004), 103 Ohio St.3d 580,2004-Ohio-5989, paragraph one of the syllabus. A trial court may, in its discretion, waive those costs for the indigent defendant, but is not required to do so. Id. at 582; R.C. 2949.092. Therefore, the trial court in this case correctly assessed prosecution costs to appellant.
 {¶ 42} As for the other costs appellant was ordered to pay pursuant to R.C. 2929.18(A)(4), this court has previously held that before ordering costs to be paid pursuant to R.C. 2929.18(A)(4), "the [trial]court shall consider the offender's present and future ability to pay the amount of the sanction." State v. Fuller, 6th Dist. No. L-02-1387, 2004-Ohio-2675. Although the court is not required to hold a hearing to make this determination, R.C. 2929.18(E), there must be some evidence in the record that the court considered the offender's present and future ability to pay the sanction imposed. Id., citing State v. Fisher (Apr. 29, 2002), Butler App. No. CA98-09-190, 2002-Ohio-2069, State v. Holmes, 6th Dist. No. L-01-1459, 2002-Ohio-6185. The state concedes that no such determination was made in this case. Accordingly, appellant's sixth assignment of error is found well-taken in part and not well-taken in part.
 {¶ 43} Upon due consideration, the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. Appellant's conviction is affirmed, and the case is reversed and remanded to the trial court for further proceedings to determine appellant's present and future ability to pay any fees permitted under R.C. 2929.18(A)(4). Costs of this appeal are assessed to appellant and appellee in equal share.
Judgment affirmed, in part and reversed, in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J. and Skow, J. Concur.