[Cite as *State v. Bowman*, 2014-Ohio-3851.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Court of Appeals No. L-11-1300

Appellee

Trial Court No. CR0200803583

v.

Robert Bowman

**DECISION AND JUDGMENT**

Appellant

Decided:  September 5, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Spiros P. Cocoves, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, which convicted appellant of murder in the first degree, in violation of R.C.

2901.01.  For the reasons set forth below, this court affirms the judgment of the trial

court.

**{¶ 2}** Appellant, Robert Bowman, sets forth the following six assignments of error:

1) THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. BOWMAN BY FAILING TO EITHER CONSIDER A JURY TO DETERMINE MR. BOWMAN'S COMPETENCE TO STAND TRIAL OR TO HAVE THE TRIAL JURY MAKE THAT DETERMINATION IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE APPLICABLE PORTIONS OF THE OHIO CONSTITUTION.

2) TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL TO MR. BOWMAN BY FAILING TO BRING TO THE TRIAL COURT'S ATTENTION THE STATUTES IN EFFECT IN 1967 IN VIOLATION OF HIS RIGHT TO COUNSEL, TO A FAIR AND RELIABLE TRIAL AND HIS DUE PROCESS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE APPLICABLE PORTIONS OF THE OHIO CONSTITUTION.

3) THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. BOWMAN WHEN IT ORDERED HIM TO PAY UNSPECIFIED COSTS,

2.

INCLUDING COURT APPOINTED FEES, WITHOUT FIRST DETERMINING THE ABILITY TO PAY THOSE COSTS.

4) A CRIMINAL DEFENDANT IS DENIED DUE PROCESS AND THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE THE ACTIONS OF HIS TRIAL COUNSEL FALL BELLOW ANY ACCEPTED STANDARD OF COMPETENCE IN VIOLATION OF HIS FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE APPLICABLE PORTIONS OF THE OHIO CONSTITUTION.

5) PROSECUTORIAL MISCONDUCT DURING THE TRIAL DEPRIVED MR. BOWMAN OF A FAIR AND RELIABLE TRIAL OR, IN THE ALTERNATIVE, TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT, BOTH IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE OHIO CONSTITUTION.

6) CUMULATIVE ERRORS DEPRIVE A CRIMINAL DEFENDANT AND CRIMINAL APPELLANT OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES

CONSTITUTION AND THE CORRESPONDING PROVISIONS OF THE

OHIO CONSTITUTION.

{¶ 3} The following undisputed facts are relevant to this appeal. In December 1967, Eileen Adams, a 14-year-old girl from Sylvania, Ohio, was a freshman at Central Catholic High School in Toledo. Each afternoon, Eileen would take a city bus from Central to a bus stop several blocks from her older sister's West Toledo home off of Sylvania Avenue.

{¶ 4} One of Eileen's classmates rode on the same bus home with her each day, although the stop at which the other Central student would exit the bus was several blocks prior to Eileen's stop. Eileen's father would later pick her up at her sister's home on his commute home from work. On the afternoon of December 18, 1967, Eileen got off the bus along Sylvania Avenue at her usual bus stop. However, Eileen never arrived at her sister's home. Eileen disappeared along the short walk from the drop-off site to her sister's nearby home.

{¶ 5} Following her disappearance, Eileen's panicked family notified the Toledo Police Department. Eileen remained missing and her fate unknown for approximately five weeks. At the end of January 1968, a Michigan hunter discovered her brutally murdered body in a rural wooded area of Monroe County, Michigan.

{¶ 6} Eileen's body was recovered wrapped in a bed sheet and placed inside of a rolled up rug. Significantly, a cord was wrapped around her feet, running around her neck so as to form a "death tie" designed to strangle her if she attempted to straighten her

4.

legs.  In addition, she had been struck in the head repeatedly with a hammer to such a degree of force that her skull was split.  White dog hair and human DNA evidence was recovered from the body.  Notably, no one in Eileen's family owned a dog.

{¶ 7} The initial police investigation into Eileen's murder failed to provide any productive leads or suspects.  The case eventually became an unsolved, cold case.  However, approximately 15 years later, in December of 1981, a former West Toledo resident named Margaret Bowman voluntarily appeared at the Toledo Police Department advising that she possessed vital information about the unsolved murder.

{¶ 8} Bowman advised the police that she had previously been married to appellant, Robert Bowman.  She went on to reveal that at the time of the 1967 murder, the couple resided with their white dog in a home along Sylvania Avenue in West Toledo in close proximity to where the victim went missing.  The Bowman home was located on the route the victim walked daily from her bus drop off point to her sister's nearby home.

{¶ 9} Significantly, Margaret Bowman disclosed that in December of 1967, while working around the home that she shared with appellant, she began hearing muffled noises coming from the fruit cellar in the basement.  She investigated the strange noises and went inside the cellar.  Once inside, she discovered an unknown teenage girl, later determined to be the victim, hanging from the cellar wall with her "arms stretched out like Jesus."  Eileen was still alive at this point but could not speak because her mouth was taped shut.  Margaret conceded that she did not rescue the girl who she discovered being held captive in her home.

5.

{¶ 10} After seeing the girl restrained in the cellar, Margaret screamed and ran upstairs. Once upstairs, Margaret was confronted by her husband, the appellant. Appellant noxiously screamed at Margaret that she was "getting in his business" and "now he had to kill her [the victim]." Appellant immediately proceeded down into the basement where the victim was being held and turned a radio up extremely loud. Eileen was murdered with multiple hammer blows to the head.

{¶ 11} Upon emerging from the basement, appellant made Margaret drive their car north, going into Southern Michigan. In Michigan, appellant removed the body from the trunk and dumped it in a rural wooded area. Appellant threatened to kill Margaret and their baby if she revealed these events to anyone. The body was discovered by a hunter approximately five weeks later.

{¶ 12} Margaret complied with appellant's threats against her and remained silent for roughly 15 years. Margaret subsequently left appellant in 1978. She returned to Toledo and in 1981 she reported the above-described 1967 events that she had witnessed in her home involving appellant to the Toledo Police Department.

{¶ 13} After Margaret's 1981 revelations, the Toledo Police Department began a search for appellant. Appellant was ultimately located in a former restaurant in Florida. Appellant was taken to a police station where he was questioned about the unsolved 1967 Toledo murder.

{¶ 14} Significantly, in the restaurant where appellant was discovered, the detectives observed a Spiderman doll hung upside down, with its hands and feet bound,

6.

and a small nail driven through the front of its head. The doll was arranged in the precise manner in which Eileen Adams was bound and killed in Toledo in 1967.

{¶ 15} Appellant revealingly advised the officers to take special note of the hands and feet of the doll during the discussions of Eileen's murder. In addition, appellant conceded to having a white dog living in his home at the time of Eileen's disappearance and murder. Nevertheless, at this juncture, it was determined that there was not enough evidence to arrest and prosecute appellant. The case remained officially unsolved for another twenty-five years.

{¶ 16} In 2006, the Toledo Police Department again reopened the case. Given interim advancements in DNA technology, detectives were now able to test the semen recovered from Eileen's underwear. Additional comparative DNA was voluntarily obtained from Margaret Bowman and her child. The testing established that appellant's DNA matched the semen found in the victim's underwear worn at the time of the killing. The likelihood of this match was one in 4,158,000.

{¶ 17} On October 31, 2008, based upon the newly established DNA evidence, appellant was indicted on one count of murder in the first degree, in violation of R.C. 2901.01, for the unsolved 1967 murder of Eileen Adams.

{¶ 18} On November 26, 2008, appellant was referred for an evaluation to determine his competency to stand trial. Dr. Charlene Cassel performed the first evaluation of appellant. Cassel determined that appellant was capable of understanding

7.

the nature and objective of the proceedings against him. Based on Cassel's report, the trial court found appellant competent to stand trial.

{¶ 19} On January 18, 2011, the trial court referred appellant for a second competency evaluation by Dr. Wayne Graves. Graves likewise concluded that appellant was capable of understanding the proceedings. Accordingly, the trial court considered all of the evidence on the competency issue and found appellant to be competent to stand trial.

{¶ 20} On August 8, 2011, the case first proceeded to a jury trial. The court declared a mistrial given the jury's inability to reach a verdict. On October 28, 2011, a second jury trial was conducted. At the conclusion of the second jury trial, appellant was found guilty and was sentenced to life imprisonment. This appeal ensued.

{¶ 21} Appellant's first two assignments of error are both prefaced upon the contention that appellant was entitled to a jury determination, rather than a bench determination, of his competency to stand trial. We note at the outset that both at the time of the 1967 murder and at the time of appellant's 2011 trial, no statutory mandate existed requiring a jury to determine the competency of an individual to stand trial.

{¶ 22} The relevant portion of the statute in effect in 1967 at the time of the commission of the homicide stated:

> § 2945.37 Inquiry into insanity of defendant. (GC § 1344-1)
>
> If the attorney for a person accused of crime whose cause is pending
> in the court of common pleas, before or after trial suggests to the court that

8.

such person is not then sane, and a certificate of a reputable physician to that effect is presented to the court, or if the grand jury represents to the court that any such person is not then sane or if it otherwise comes to the notice of the court that such person is not then sane, the court shall proceed to examine into the question of the sanity or insanity of said person, or in its discretion may impanel a jury for such purpose. If three fourths of such jury agree upon such a verdict, such verdict may be returned as the verdict of the jury. If there is a jury trial and three fourths of the jury do not agree, another jury may be impaneled to try such question.

{¶ 23} Although appellant argues that this statute established a vested right to a jury trial on the issue of competency, its express language is clearly discretionary. Thus, when the discretionary jury provision was removed from the statute effective November 1, 1978, the amendment did not impair a vested right or impose new or additional burdens, duties, obligations, or liabilities that would be unconstitutionally retroactive. *Bielat v. Bielat*, 87 Ohio St.3d 350, 359, 721 N.E.2d 28 (2000).

{¶ 24} Furthermore, the Supreme Court of Ohio has consistently applied the version of R.C. 2945.37 in effect at the time of trial. In *State v. Chapin*, 67 Ohio St.2d 437, 424 N.E.2d 317 (1981), appellant was indicted on October 18, 1978, on an aggravated murder charge. The case proceeded to trial with a finding of guilty on March 7, 1979. In the interim, R.C. 2945.37 was amended, effective November 1, 1978. The court went on to make its determination without analysis, "pursuant to the present

R.C. 2945.37." *Id.* at 441. Also, in *State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, the court applied the provisions of R.C. 2945.37 that were in effect at the time of trial. *Id.* at 174.

{¶ 25} Present R.C. 2945.37, which is the relevant and controlling statute in effect at the time of appellant's trial, clearly establishes that the trial court determines questions of competency. R.C. 2945.37 establishes in relevant part, "If the issue is raised before trial, the court shall hold a hearing on the issue * * * If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown * * *."

{¶ 26} Notably, the statute in no way authorizes the trial court to impanel a jury to determine the competency of a defendant to stand trial on any basis, mandatory or discretionary. Wherefore, we find that the trial court did not err in conducting a bench determination of competency. Appellant's first assignment of error is found not well-taken.

{¶ 27} Similarly, given our determination that appellant had no right to a jury ruling on competency, the failure of counsel to request a course of action to which appellant was not entitled cannot constitute ineffective assistance of counsel. Wherefore, we find appellant's related second assignment of error not well-taken.

{¶ 28} In the third assignment of error, appellant asserts that the imposition of "unspecified" costs, including court appointed fees, without first determining the ability to pay these costs, is erroneous.

10.

**{¶ 29}** The trial court found that appellant had, "or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, assigned counsel, and prosecution, as authorized by law." Accordingly, appellant was ordered to "pay the cost assessed pursuant to R.C. 9.92(C), 2929.18 and 2851.021."

**{¶ 30}** R.C. 2947.23 not only permits a court to assess costs against an indigent defendant, "it *requires* a court to assess costs against all convicted defendants." *State v. White,* 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8 (emphasis in original). This encompasses the cost of prosecution and jury fees. R.C. 2947.23(A).

**{¶ 31}** A sentencing court may waive these costs for an indigent defendant, but, to preserve the issue, a motion for a waiver of costs must be made at the time of sentencing. *State v. Threatt,* 108 Ohio St.3d 277, 843 N.E.2d 164, 2006-Ohio-905, paragraph two of the syllabus. In this matter, there is nothing in the record to suggest that appellant moved to waive the R.C. 2947.23 costs at the sentencing hearing. As a result, there was no impropriety in the court's imposition of prosecution costs and jury fees.

**{¶ 32}** R.C. 9.92 requires that specific courts impose a one dollar additional court cost to fund the citizen's reward fund. The fee is mandatory; however, "in the court's discretion, may remit this one dollar additional court costs to the offender." R.C. 9.92(C)(1). The statute provides for no means test. Since the decision to remit is discretionary, a court's failure to remit will not be disturbed on appeal absent an abuse of discretion. An abuse of discretion is more than a mistake of law or a factual error, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable.

11.

*Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983). We cannot find an abuse of discretion for failure to remit when, as here, there was no request for remission from appellant before the trial court.

{¶ 33} R.C. 2951.021 permits a sentencing court that places a felony offender under a community control sanction to require the offender to pay a maximum $50 monthly supervision fee as a condition of parole. No means test is stated. Imposition is in the discretion of the court. Appellant fails to articulate how imposition of this fee constitutes an abuse of discretion.

{¶ 34} R.C. 2929.18(A)(5)(ii) provides that a sentencing court may impose as a financial sanction, "[a]ll or part of the costs of confinement * * * provided that the amount of reimbursement ordered under this division shall not exceed the total amount of reimbursement the offender is able to pay as determined at a hearing and shall not exceed the actual cost of the confinement * * *." However, "[b]efore imposing a financial sanction under [R.C. 2929.18], the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(6). We have held that while a sentencing court is not required to hold a hearing when determining whether to impose a financial sanction under this provision, the record must contain some evidence that the court considered the offender's ability to pay such a sanction. *State v. Lamonds,* 6th Dist. Lucas No. L-03-1100, 2005-Ohio-1219, ¶ 42.

{¶ 35} The recovery of appointed counsel fees is governed by R.C. 2941.51(D) which provides that such fees, "* * * shall not be taxed as part of the costs and shall be

paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." Again, no hearing on this matter is expressly required, but the court must enter a finding that that the offender has the ability to pay and that determination must be supported by clear and convincing evidence of record. *State v. Knight,* 6th Dist. Sandusky No. S-05-007, 2006-Ohio-4807, ¶ 6-7.

{¶ 36} Although the trial court entered the requisite findings in this matter, no hearing was held on appellant's ability to pay. Except for an affidavit of indigency, there was no evidence presented of appellant's ability to pay.

{¶ 37} There was no presentence report. Although the record does contain three competency reports, none of them furnish evidence of appellant's ability to pay any costs. These reports would support a contrary finding.

{¶ 38} Absent evidence in the record supporting the trial court's finding that appellant had, or could reasonably in the future be expected to have, the ability to pay the cost of his confinement or his appointed attorney fees, appellant's third assignment is found well-taken to the extent that these fees were imposed.

{¶ 39} In the fourth assignment of error, appellant again asserts that he received ineffective assistance of counsel. In support, it is maintained that trial counsel should have inquired about appellant's substance abuse and retained an expert in drug and alcohol abuse.

13.

**{¶ 40}** To prevail on an ineffective assistance of counsel claim, appellant must establish that trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result. Appellant must show that counsel's representation fell below an objective standard of reasonableness to such an extent that, but for counsel's perceived errors, the results of the proceeding would have been different. *State v. Plassman*, 6th Dist. Fulton No F-07-036, 2008-Ohio-3842, ¶ 29.

**{¶ 41}** The record reflects that appellant's argument of ineffective assistance of counsel in connection to drugs and alcohol is based solely upon conjecture. The record is devoid of any objective evidence that appellant abused drugs or alcohol at any relevant time or that a drug and alcohol expert would have provided any outcome determinative information. Wherefore, we find appellant's fourth assignment of error not well-taken.

**{¶ 42}** In the fifth assignment of error, appellant asserts that alleged prosecutorial misconduct during closing arguments deprived him of a fair trial. It is well-established that the controlling test for prosecutorial misconduct is whether the disputed remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Eley*, 77 Ohio St.3d 174, 187, 672, N.E.2d 640 (1996).

**{¶ 43}** Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. *State v. Balew*, 76 Ohio St.3d 244, 667 N.E.2d 369 (1996). During closing arguments, the prosecution is free to comment upon that which the evidence has

14.

shown and any reasonable inferences that can be drawn therefrom. *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶ 44} Most significantly, any purported misconduct of counsel during closing arguments must be considered in the context of the entire case to determine if it resulted in actual prejudice to the defendant. *State v. Lorraine*, 66 Ohio St.3d 414, 613 N.E.2d 212 (1993). Notably, as most relevant to the instant case, the Supreme Court of Ohio has found no impropriety in prosecutorial calls for justice during closing arguments. *State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483, ¶ 47; citing *State v. Hill*, 75 Ohio St.3d 195, 661 N.E.2d 1068 (1996).

{¶ 45} Appellant characterizes certain statements made by the prosecution during closing arguments as "disparaging," and "overblown rhetoric." The record belies these claims. For example, the record shows that during closing arguments the prosecution stated,

> He also did what, no disrespect to [defense counsel], a very common defense tactic is he basically says don't look at the evidence they have, look at what they didn't do. Focus on that. I'm going to ask you to focus on the evidence that we did in fact present to you.

{¶ 46} In addition, the prosecution conveyed,

> Because we're coming up on December 18th of this year, 44 years that there's been no closure and no justice for Eileen Adams. I submit to you that you're now going to get the case, and that if your verdict is just

15.

and provides closure to the Adams family that it will be a verdict of guilty as charged.

{¶ 47} We have carefully considered allegations of prosecutorial misconduct in this matter. We find that the record of evidence reflects no impropriety in the disputed statements by the prosecution during closing arguments and no prejudice to appellant. Wherefore, we find appellant's fifth assignment of error not well-taken.

{¶ 48} In appellant's sixth assignment of error, he asserts that he was denied a fair trial due to alleged cumulative errors of the trial court. In essence, appellant contends that all prior claimed assignments of error collectively constitute prejudicial error.

{¶ 49} The Ohio Supreme Court has delineated the cumulative error doctrine as, "although violations of evidence during trial, singularly, may not rise to the level of prejudicial error, a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987).

{¶ 50} In this case, we found no instances of trial court error in our determinations in response to the first five assignments of error beyond error in connection to imposition of costs which does not constitute prejudicial error. Appellant's sixth assignment of error is found not well-taken.

{¶ 51} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Lucas County Court of Common Pleas is hereby affirmed, in part, and reversed, in part. The portion of the court's sentencing order

requiring appellant to pay the cost of his confinement and appointed attorney fees is vacated. The matter is remanded to the trial court for further proceedings consistent with this decision. Appellant and appellee are hereby ordered to share equally the court costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,<br>
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

Stephen A. Yarbrough, P.J. _____

James D. Jensen, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.